LOCAL 1804, INTERNATIONAL LONGSHOREMEN'S ASSOCIA-
TION, AFL–CIO, LOCAL 1804–1, INTERNATIONAL LONG-
SHOREMEN'S ASSOCIATION, AFL–CIO, AND JAMES CASHIN,
PLAINTIFFS–APPELLANTS, v. WATERFRONT COMMISSION
OF NEW YORK HARBOR, DEFENDANT=RESPONDENT.

Argued November 3, 1980—Decided April 15, 1981.

*Gerald D. Miller* argued the cause for appellants (*Miller, Hochman, Meyerson & Schaeffer*, attorneys for Local 1804, etc., et al. and *John P. Russell*, attorney for James Cashin).

*Gerald P. Lally* argued the cause for respondent (*Gerald P. Lally*, attorney; *David B. Greenfield*, of counsel and on the brief).

*Lafianza, Aurigemma & Slaff* submitted a brief on behalf of *amicus curiae* International Longshoremen's Association, AFL–CIO (*Lafianza, Aurigemma & Slaff*, attorneys; *Thomas W. Gleason* and *Gary G. Nicolosi*, members of the New York bar, of counsel).

The opinion of the Court was delivered by

POLLOCK, J.

The issue on this appeal is whether the term "convicted" as used in section 8 of the Waterfront Commission Act, *N.J.S.A.* 32:23–80 and 80.2, means upon conviction by a trial court or after exhaustion of appellate review.

Section 8, in relevant part, prohibits a person who has been convicted of certain crimes, including a high misdemeanor, from serving as an officer of a labor organization. It prohibits also a labor organization from collecting dues if an officer has been convicted of such a crime.

James Cashin was the Secretary-Treasurer of Locals 1804 and 1804–1 (the local unions) of the International Longshoreman's Association, AFL–CIO (ILA). A jury convicted Cashin of assault with intent to kill and of assault with an offensive weapon,

which were high misdemeanors under *N.J.S.A.* 2A:90–2 and 3. He appealed his convictions.

After Cashin's conviction, the Waterfront Commission of New York Harbor (Commission) advised the ILA, in effect, that unless Cashin resigned as secretary-treasurer, the local unions would violate section 8 if they collected dues. The Commission also sent a letter to the stevedore companies that employed members of the local unions, advising them that collecting dues while Cashin retained office would violate section 8.

Cashin and the local unions then filed this action against the Commission seeking a declaration that section 8 should take effect only when Cashin's conviction was affirmed on appeal. The trial judge granted a summary judgment for the Commission, holding that under section 8 Cashin was "convicted" on the entry of the guilty verdict. Thereafter, the local unions suspended Cashin from office.

After analyzing section 8 in light of New Jersey law, the Appellate Division affirmed, concluding that the disqualification from holding office under the Waterfront Commission Act occurred "upon conviction in the trial court and not only after the expiration of all appeals." 171 *N.J. Super.* 508, 515 (1979). We granted the local unions' petition for certification. 82 *N.J.* 302 (1980). We now affirm substantially for the reasons set forth in the Appellate Division's opinion.

We note that state and federal courts in New York have relied upon the Appellate Division decision in concluding that "convicted" in section 8 means upon conviction in the trial court. *Scotto v. Waterfront Comm'n of N.Y. Harbor,* (Sup.Ct. Sept. 19, 1980), aff'd o.b. 434 N.Y.S.2d 1004 (App.Div.1980), appeal den. 50 *N.Y.*2d 709, 415 *N.E.*2d 984, 434 *N.Y.S.*2d 1025 (1980); *ILA v. Waterfront Comm'n of N.Y. Harbor,* 495 *F. Supp.* 1101, 1115 (S.D.N.Y. 1980), aff'd in part and rev'd in part, 642 *F.*2d 666 (2 Cir. 1981). A further opinion is required, however, because the ILA, appearing as *amicus curiae,* and the local unions raise certain federal preemption issues not argued before the Appellate Division.

ILA and the local unions contend that state court interpretation of the meaning of "convicted" in section 8 is preempted by three federal statutes: Labor Management Reporting and Disclosure Act (LMRDA) § 504(c), LMRDA § 401(e) and Employee Retirement Income Security Act (ERISA) § 411(c). 29 *U.S.C.* §§ 504(c), 481(e), 1111(c) (1976). In the Appellate Division, the local unions asserted that the interpretation of section 8 "should be guided by" LMRDA § 504. 171 *N.J. Super.* at 514. LMRDA § 504 prohibits a person convicted of an offense like the one in this case from holding union office for five years after the conviction and provides further in subsection (c) that the date of the conviction shall be the later of the judgment in the trial court or its affirmance on appeal. The Appellate Division rejected the contention that LMRDA § 504(c) should control section 8. In this opinion, we shall review that conclusion in the context of our analysis of the contention that LMRDA § 504(c), LMRDA § 401(c) and ERISA 411(c) preempt section 8.

I

The Commission was created by a compact of the legislatures of New Jersey and New York with the consent of Congress. Act of Aug. 12, 1953, ch. 407, 67 *Stat.* 541. The New Jersey act consists of three parts. Part I is the compact. *N.J.S.A.* 32:23–1 to –73. Parts II and III contain respectively provisions dealing with the administration of a plan for assessments against employers to meet the expenses of the Commission, *N.J.S.A.* 32:23–74 to 77.3, and provisions supplementing the compact such as section 8, *N.J.S.A.* 32:23–78 to –84. Although the supplementary provisions of parts II and III are not part of the compact, in consenting to the compact, Congress stated:

> The consent of Congress is hereby given to the compact set forth below ... and to the carrying out and effectuation of said compact, and enactments in furtherance thereof .... [Act of Aug. 12, 1953, ch. 407, 67 *Stat.* 541].

Before the creation of the compact, New Jersey, New York and Congress conducted extensive studies of the domination of waterfront unions by labor racketeers and other criminals. The

extensive legislative history is chronicled in decisions of the United States Supreme Court and this Court. *See, e. g., DeVeau v. Braisted*, 363 *U.S.* 144, 147–151, 80 S.Ct. 1146, 1148–1150, 4 L.Ed.2d 1109 (1960); *In re Application of Waterfront Comm'n of N.Y. Harbor*, 35 *N.J.* 62, 71–74 (1961); *Hazelton v. Murray*, 21 *N.J.* 115, 120–123 (1956). At this late date, it is not necessary to recount in detail the conditions that gave rise to the Act. As the compact states, the conditions on the waterfront "are depressing and degrading [to waterfront labor and] . . . not only does there result a destruction of the dignity of an important segment of American labor, but a direct encouragement of crime which imposes a levy of greatly increased costs on food, fuel and other necessaries . . . ." 67 *Stat.* 541–542.

In *Hazelton v. Murray, supra*, while writing for this Court, Justice Brennan quoted from a report of the United States Senate that recited: "Criminals whose long records belie any suggestion that they can be reformed have been monopolizing controlling positions in the International Longshoremen's Association and in local unions. Under their regimes, gambling, the narcotics traffic, loan sharking, short-ganging, payroll 'phantoms,' the 'shakedown' in all its forms—and the brutal ultimate of murder—have flourished, often virtually unchecked." *S.Rep.* No. 653, 83d Cong., 1st Sess. 7 (1953), *quoted in Hazelton v. Murray, supra*, 21 *N.J.* at 122. Justice Brennan concluded: "it is strikingly apparent that, so long as criminal elements, bent upon exploitation of employer and employee for corrupt motives, dominated the waterfront, through their control of the workers' labor organization, progress toward solution of the basic difficulties through free collective bargaining or other lawful means, was virtually impossible. The first and immediate need, then, was to break the grip of the racketeers and hoodlums." 21 *N.J.* at 123.

This litany of lawlessness continues to the present. *See* Statement of Nicholas Scoppetta, Waterfront Commission of N.Y. Harbor Commissioner, Before the Senate Subcomm. on Investigations 25–30 (Feb. 18, 1981). Recently the New York

courts sustained the imposition of section 8 sanctions against Anthony Scotto and Anthony Anastasio, president and vice president, respectively, of Local 1804 of the ILA, because of their convictions in the United States District Court for the Southern District of New York for racketeering and other crimes. *Scotto v. Waterfront Comm'n of N.Y. Harbor, supra.* More recently, the federal courts in New York sustained section 8 against a preemption challenge by another ILA local and one of its officials who was convicted of obtaining a loan from an employer of union members. *ILA v. Waterfront Comm'n of N.Y. Harbor*, 642 *F.*2d 666 (2 Cir. 1981), aff'g. in part and rev'g. in part, 495 *F. Supp.* 1101 (S.D.N.Y. 1980). We address the preemption arguments of the plaintiffs and the *amicus* against this background.

II

Pursuant to the Supremacy Clause of the United States Constitution, art. VI, cl. 2, Congress can preempt state laws. In general, preemption arises by explicit or implicit usurpation of a field or by conflict with a specific provision of federal law. The three preemption issues raised by the ILA involve both preemption by specific conflict and, with respect to ERISA, preemption by usurpation of the field. The guiding light in the analysis of any preemption issue, however, is the intent of Congress. *See Malone v. White Motor Corp.*, 435 *U.S.* 497, 504, 98 *S.Ct.* 1185, 1190, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks Int'l. Assoc., Local 1625, AFL–CIO v. Shermerhorn*, 375 *U.S.* 96, 103, 84 *S.Ct.* 219, 222, 11 *L.Ed.*2d 179 (1963) ("The purpose of Congress is the ultimate touchstone")). Nonetheless, as Justice Frankfurter wrote in *DeVeau*, "The doctrine of pre-emption does not present a problem in physics but one of adjustment because of the interdependence of federal and state interests and of the interaction of federal and state powers." 363 *U.S.* at 152, 80 *S.Ct.* at 1151. Preemption tolerates some slippage in the gears in the mesh between federal and state government. Analysis requires a balancing of the degree of intrusion by a state into federal

policy and the relative importance of the federal and state policies.

The leading case of *DeVeau v. Braisted, supra,* suggests three criteria for determining whether a federal law preempts section 8. The criteria are: (1) the extent to which the matter regulated involves matters of local responsibility or concern; (2) the degree to which the state law interferes with federal law; and (3) the amount of interference Congress was willing to tolerate. *See also ILA v. Waterfront Comm'n of N.Y. Harbor, supra,* 495 *F. Supp.* at 1110. With respect to the latter two criteria, "[t]he fact that there is some restriction due to the operation of state law does not settle the issue of pre-emption." 363 *U.S.* at 152, 80 *S.Ct.* at 1151. Minimal or marginal interference with federal labor policy is acceptable. *ILA v. Waterfront Comm'n of N.Y. Harbor, supra,* 495 *F. Supp.* at 1124.

Application of all three criteria in this case leads to the conclusion that LMRDA § 504 does not preempt our interpretation of section 8. Removing criminal elements from the waterfront in New York and New Jersey is a peculiarly local problem in which each state has a compelling interest. *DeVeau, supra,* 363 *U.S.* at 154, 80 *S.Ct.* at 1151. That conclusion, recognized by both Congress and the United States Supreme Court, weighs heavily against preemption. In addition, congressional willingness to tolerate some interference with LMRDA is manifest from the unique consent clause in the Waterfront Commission compact and the specific disclaimers of preemption contained in LMRDA §§ 603(a) and 604. *Id.* at 156, 80 *S.Ct.* at 1152. In *DeVeau* Justice Frankfurter described LMRDA § 603(a) as "an express disclaimer of pre-emption of state laws regulating the responsibilities of union officials . . . ." *Id.* at 157, 80 *S.Ct.* at 1153.

More important, in giving its consent to the compact, Congress did not merely remain silent regarding supplementary legislation such as section 8. As indicated above, Congress formally consented to state supplementary legislation, a consent which Justice Frankfurter found "to be unique in the history of

compacts." *Id.* at 154, 80 *S.Ct.* at 1151. In addition, in determining the extent to which Congress was willing to accept the sanctions of section 8, it is enlightening to recall that the ILA voiced objections during congressional subcommittee hearings that section 8 unduly interfered with federal labor policy. Notwithstanding that contention, Congress expressly consented to the enactment of implementing legislation not part of the compact such as section 8. *Id.* at 151, 80 *S.Ct.* at 1150. In light of this Court's finding in *Hazelton v. Murray, supra,* that the presence of criminal elements in waterfront labor organizations prevented free collective bargaining, it would be ironic as well as inconsistent to hold that the disqualification from office of a labor official convicted of a high misdemeanor contravenes federal labor policy. Judge Sofaer of the Southern District of New York reached the same result, stating:

> In light of the special circumstances presented by waterfront union corruption, and given Congress' unique response approving the Compact with its enabling clause, it seems clear that Congress would tolerate if not command WCA § 8's requirement that union officers resign or be removed before appeals are final, even though it is a departure from the federal rule. [495 *F. Supp.* at 1124–1125].

*See also Scotto, supra* (meaning of "convicted" in section 8 not preempted).

The possibility of preemption by LMRDA § 401(e) presents a simpler issue. That section prohibits unions from interfering improperly with the election of union officers, but does not preempt expressly state laws imposing additional eligibility requirements on those officers. Our conclusion that LMRDA § 401(e) does not preempt section 8 follows from our analysis of the strong local interest of New Jersey in its waterfront, the minimal interference of section 8 with LMRDA, the disclaimer in LMRDA of preemption and the unique consent of Congress to the waterfront compact. As Judge Sofaer observed:

> The LMRDA was adopted in large part because state and local authorities had failed to adopt 'effective measures to stamp out crime and corruption [in unions] and guarantee internal union democracy . . . .' . . . Consistent with this legislative purpose, Congress could reasonably allow a state to adopt more restrictive eligibility requirements, but at the same time refuse to permit a union to interfere with internal democracy. [495 *F. Supp.* at 1123].

The third issue is whether our interpretation of section 8 is preempted by ERISA § 411(c). That section prohibits a person convicted of an offense like the one in this case from holding a position with an employee benefit plan for five years after the conviction. Like LMRDA § 504(c), ERISA § 411(c) defines "convicted" to mean after exhaustion of appellate review. Unlike LMRDA, however, ERISA does not disclaim preemption. Subject to two express exceptions, ERISA provides that preemption shall apply to "all state laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." ERISA § 514(a), 29 *U.S.C.* § 1144(a) (1976). Neither of the express exceptions is relevant. Consequently, we are remitted to construing congressional intent according to the three criteria of *DeVeau* to determine whether ERISA § 411(c) preempts section 8.

First, as discussed above, section 8 focuses on a unique local problem. Congressional recognition of the interest of New Jersey in removing crime from its waterfront must be weighed against the federal interest in uniformly protecting employee benefit plans. Stated otherwise, we must evaluate the extent to which the provision in section 8 for removal of a union officer on conviction by a trial court interferes, if at all, with the requirement of ERISA that the officer should be removed only after exhaustion of appellate review. The evaluation requires a balancing of the potential for interference by section 8 with ERISA and the willingness of Congress to tolerate that interference. That approach is consistent with general preemption principles which require "a balanced inquiry into the degree of intrusion on federal policies and the relative importance of the federal and state interests at stake." 93 *Harv. L. Rev.* 263, 269 (1979).

Second, in ERISA, Congress made clear its intent to preempt state laws affecting employee benefit plans. *See* 120 *Cong. Rec.* 29197 (1974). *See generally* Kilberg & Heron, "The Preemption of State Law Under ERISA," 1979 *Duke L.J.* 383, 390–392; Macey, "Labor Pains: ERISA and the Evolving Doctrine of

Federal Preemption of State Law Relating to Employee Benefit Plans," 4 *Seton Hall Leg. J.* 1, 35–44 (1978); *see also Hewlett-Packard Co. v. Barnes*, 571 *F.*2d 502 (9 Cir. 1978), *cert.* den., 439 *U.S.* 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). Congress, however, did not intend to secure benefits for all employees by exposing workers on the waterfront to crime and corruption. Both section 8 of the compact and section 411(c) of ERISA require removal of union officers for their misconduct. Although the statutes have different purposes, they both protect employees, their unions and the public. The provision of section 8 that a conviction is effective on entry by a trial court differs minimally from the provision of ERISA that a conviction is effective only after exhaustion of all appeals. Thus viewed, section 8 does not impinge upon section 411(c) of ERISA in any significant sense.

Finally, in determining the scope of preemption by ERISA, we must examine not only that statute, but all related federal legislation. *See, e. g., New York Tel. Co. v. New York State Dept. of Labor*, 440 *U.S.* 519, 99 *S.Ct.* 1328, 59 *L.Ed.*2d 553 (1979); *Malone, supra.* Several circuit courts have looked outside of ERISA in holding that a state law was not preempted by ERISA § 514. *See Bucyrus-Erie Co. v. Department of Indus., Labor and Human Relations*, 599 *F.*2d 205, 210 n.9 (7 Cir. 1979) (in light of congressional intent expressed in Title VII of Civil Rights Act of 1964 and its amendments, ERISA held not to preempt state fair employment laws); *A.T. & T. Co. v. Merry*, 592 *F.*2d 118 (2 Cir. 1979) (garnishment order used to satisfy court-ordered family support payments impliedly excepted from preemption by ERISA); *Stone v. Stone*, 450 *F. Supp.* 919 (N.D. Cal.1978), aff'd, 632 *F.*2d 740 (9 Cir. 1980) (in community property state, ERISA does not preempt state court orders requiring an ERISA-regulated pension plan to pay a participant's benefits directly to ex-spouse).

Despite the broad preemption provision of ERISA, the unique consent clause to the Waterfront Commission Compact is persuasive evidence of congressional intent not to preempt state

action pursuant to the compact. *See In re Application of Waterfront Comm'n of N.Y. Harbor, supra.* By approving the compact, Congress consented to stricter regulation of union officials in this narrow area. *DeVeau, supra,* 363 *U.S.* at 154, 80 *S.Ct.* at 1151. We conclude, therefore, that section 8 is not preempted by LMRDA §§ 504(c), 401(e) or ERISA § 411(c), and that the meaning of "convicted" under New Jersey law controls.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.