

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-1995

# Carson v. Waterfront Comm. of NY Harbor

Precedential or Non-Precedential:

Docket 95-5309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Carson v. Waterfront Comm. of NY Harbor" (1995). *1995 Decisions.* Paper 321.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/321

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5309


DONALD CARSON,

Appellant

v.

WATERFRONT COMMISSION OF NEW YORK HARBOR;
GERALD P. LALLY;
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, ("ILA");
ATLANTIC COAST DISTRICT OF THE ILA;
JOHN BOWERS;
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1588


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 94-cv-01594)


Argued November 28, 1995
BEFORE:  MANSMANN, COWEN and SEITZ,
Circuit Judges

(Filed December 28, 1995)



Fredric J. Gross (argued)
7 East Kings Highway
Mount Ephraim, New Jersey  08059

        COUNSEL FOR APPELLANT
        DONALD CARSON

David B. Greenfield (argued)
Waterfront Commission of New York Harbor
42 Broadway
New York, New York  10004



1

OPINION
`
_____

COWEN, Circuit Judge.

This case presents a Supremacy Clause challenge to New Jersey's implementation of the Waterfront Commission Act of 1953, an interstate compact between New York and New Jersey aimed at eliminating racketeering and other pernicious activities in the Port of New York District. Appellant Donald Carson contends that § 8 of that Act conflicts with a 1984 amendment to the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. §504(d). Finding that the 1984 amendment effected no change in Carson's rights whatsoever, we hold that his preemption claim is barred by the Supreme Court's decision in De Veau v. Braisted, 363 U.S. 144, 80 S. Ct. 1146 (1960) (plurality opinion), which rejected a claim that § 8 conflicted with the pre-1984 version of § 504. We therefore will affirm the district court's order dismissing Carson's claims against the Waterfront Commission pursuant to Fed. R. Civ. P. 12(b)(6).

**I.**

Donald Carson was an officer in the International Longshoremen's Association ("ILA") and two related entities when a jury in the United States District Court for the District of New Jersey found him guilty of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and extortion conspiracy in

2

violation of 18 U.S.C. §§ 2 and 1951. Two days later, Gerald Lally, the General Counsel to the Waterfront Commission ("Commission"), advised John Bowers, ILA's President, that Carson's continued employment after his conviction would place the union in violation of New Jersey's enactment of section 8 of the Waterfront Commission Act ("WCA"), N.J. Stat. Ann. § 32:23-80,[1] which forbids a union from operating as such in New Jersey if one of its officers has been "convicted" of certain crimes.

Bowers forwarded a copy of Lally's letter to Carson and advised him that in light of his conviction, he was suspended from his union positions. Several days later, the Commission, through Lally, advised Bowers that suspension of a convicted union officer was insufficient to comply with § 8 of the WCA. Accordingly, Bowers sent Carson another letter informing him that he was being "removed from all offices of the ILA and its affiliates and all fringe benefit funds." Letter from Bowers to Carson of 4/25/88, at 1. Carson appealed his criminal

---

[1] No person shall solicit, collect or receive any dues, assessments, levies, fines or contributions, or other charges within this State of New Jersey for or on behalf of any labor organization, which represents employees registered or licensed pursuant to the provisions of this act . . . if any officer . . . has been convicted by a court of the United States, or any State or territory thereof, of treason, murder, manslaughter or any felony, high misdemeanor or misdemeanor involving moral turpitude, or any crime or offense enumerated in subdivision 3(b) of section 5-n of this act, unless he has been subsequently pardoned therefor . . . .

N.J. Stat. Ann. § 32:23-80.

3

conviction, and we vacated the judgment. United States v. Carson, 969 F.2d 1480 (3d Cir. 1992). The indictment ultimately was dismissed.

Carson brought this suit against the Commission, Lally and various ILA officials.[2] His principal claim was that by enforcing § 8 of the WCA, which required his removal upon the return of a guilty verdict, the defendants conspired to deprive him of wages to which he claims convicted–but–exonerated officials are entitled under the 1984 amendment to § 504 of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"). Section 504(d) of the LMRDA requires unions to escrow the wages of an official "barred by virtue of [that] section" and to remit those wages to the official if he is ultimately exonerated. 29 U.S.C. § 504(d). Since the escrow provision does not take effect until there is a "conviction," which § 504(c) defines as the entry of a judgment of conviction (i.e., at sentencing), Carson alleged that the Commission's action in seeking and obtaining his removal based on the state-law interpretation of the term

---

[2]Carson's claims against the ILA officials were enjoined pursuant to a December 21, 1994, order of the United States District Court for the Southern District of New York, which had before it a massive civil RICO action against ILA and Carson. That action ultimately resulted in a judgment against Carson, and an appeal to the Court of Appeals for the Second Circuit was partially successful. United States v. Carson, 52 F.3d 1173 (2d Cir. 1995). Both parties to that appeal have petitioned for rehearing. In the meantime, Carson had appealed separately from the Southern District's order enjoining his claims against the ILA defendants. By stipulation, however, that appeal was being held in abeyance pending the resolution of the parties' respective petitions for rehearing. The district court, therefore, granted Carson's request for an administrative termination of his claims against the ILA defendants.

4

"conviction" in § 8 of the WCA (i.e., a guilty verdict) contravened the Supremacy Clause and was unlawful.

In granting the Commission's motion to dismiss for failure to state a claim, the district court disagreed. Separating its analysis into two parts, the district court first looked to whether the definition of "conviction" in § 8 of the WCA contravened the pre-1984 version of § 504 of the LMRDA, which defined "conviction" as a judgment from which no further appeals could be taken. The district court noted initially that the Supreme Court in De Veau v. Braisted, 363 U.S. 144, 80 S. Ct. 1146 (1960) (plurality opinion), held that § 8 of the WCA was not preempted by the pre-1984 version of § 504 of the LMRDA. Then, relying on International Longshoremen's Ass'n v. Waterfront Commission, 642 F.2d 666 (2d Cir.), cert. denied, 454 U.S. 966, 102 S. Ct. 509 (1981), and Local 1804, International Longshoremen's Ass'n v. Waterfront Commission, 428 A.2d 1283 (N.J. 1981), the district court concluded that "[i]t has been judicially settled that section 504(c)'s pre-1984 definition of 'conviction' did not pre-empt the viability of section 8." J. App. at 91.

The district court then turned to the current version of § 504 of the LMRDA and determined that

> [t]he present definition of "conviction" under section 504(c) reads closer to the original, practical thrust of section 8. The addition of section 504(d) has not imposed additional responsibilities upon the Commission or Lally. That section does not require the Waterfront Commission to establish

5

> and maintain an escrow account for the benefit of union officials. Therefore, neither the change of 504(c) nor the addition of 504(d) presents a significant departure from section 504 pre-1984 to invalidate section 8.

App. at 91-92. After holding that Lally, the Commission's General Counsel, was entitled to qualified immunity, the district court dismissed Carson's complaint against both the Commission and Lally. This appeal followed. Carson does not challenge the district court's qualified immunity determination in this appeal.

## II.

The district court's jurisdiction was premised upon 28 U.S.C. §§ 1331, 1332 and 1367. The district court directed entry of final judgment on Carson's claims against the Commission under Fed. R. Civ. P. 54(b). Our jurisdiction over this appeal from a final determination of the district court rests on 28 U.S.C. §1291. We exercise plenary review over a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III.

The gravamen of Carson's Supremacy Clause challenge is that the 1984 amendment to § 504 of the LMRDA, which created the escrow requirement, expressed a clear congressional intent that criminally convicted union officials who are removed from office but ultimately exonerated should be entitled to their wages: "[t]his new subsection . . . is designed to mitigate the harm of a wrongful conviction." Carson's Br. at 13. Since strict

6

application of New Jersey's interpretation of the term "conviction" in § 8 of the WCA operates to remove convicted union officials before § 504(d)'s escrow requirement can be triggered, Carson contends, the Supremacy Clause requires that the WCA bow to the paramount federal policy. We disagree.

**A.**

Carson hinges his claim on the 1984 amendment to § 504 ostensibly because the Supreme Court's decision in De Veau, 363 U.S. at 144, 80 S. Ct. at 1146, rejected a generalized claim that § 8 of the WCA was preempted by the pre-1984 version § 504 of the LMRDA and because both the Court of Appeals for the Second Circuit and the New Jersey Supreme Court, prior to 1984, rejected the very claim Carson raises here. See International Longshoremen's Ass'n v. Waterfront Comm'n, 642 F.2d 666 (2d Cir.), cert. denied, 454 U.S. 966, 102 S. Ct. 509 (1981); Local 1804, Int'l Longshoremen's Ass'n v. Waterfront Comm'n, 428 A.2d 1283 (N.J. 1981). Therefore, as a way around this rather formidable body of precedent, Carson has attempted to demonstrate an intervening change in the law which would render De Veau and its progeny inapplicable.

Carson's argument that the escrow provision added by the 1984 amendment to § 504 demonstrates a special congressional concern with "mitigat[ing] the harm of a wrongful conviction" is fatally flawed at its inception. As the district court's discussion implied, the post-1984 version of 29 U.S.C. § 504 expressed no more of a congressional intent "to mitigate the harm of a wrongful conviction" than did the pre-1984 version. On the

7

contrary, convicted union officials are in fact worse off after the 1984 amendment. A comparison of the former and current versions of § 504, the pertinent provisions of which we will set forth in the margin, demonstrates this conclusively.

Under the pre-1984 version of § 504,[3] a union official was required to be suspended for five years upon being "convicted" of certain crimes. The statute defined "conviction" as a judgment from which no further appeals have been or could have been taken. Thus, under federal law, union officials convicted of a crime listed in § 504 could retain their positions and receive wages until such time as their appeals had been exhausted; only those officials whose convictions were upheld on appeal were required to step down. The obvious effect was that criminally convicted officials were entitled to work and receive

_____

[3]**(a) [P]ersons convicted of robbery, bribery, etc.**

> No person who . . . has been convicted of, or served any part of a prison term resulting from his conviction of, [certain enumerated crimes] . . . shall serve--
> > (1) as an officer . . . of any labor organization,
> > . . . .
> during or for five years after . . . such conviction . . . .
>
> . . . .

**(c) Definitions**

> For the purposes of this section, any person shall be deemed to have been "convicted" . . . from the date of the judgment of the trial court or the date of the final sustaining of such judgment on appeal, whichever is the later event . . . .

29 U.S.C. § 504 (1982) (amended 1984 & 1987).

8

wages during the pendency of their appeals irrespective of whether they were ultimately exonerated.

The 1984 amendment, however, required that convicted union officials be removed far sooner than under the previous version of § 504. Under the current version,[4] <u>all</u> convicted

---

[4]

**(a) [P]ersons convicted of robbery, bribery, etc.**

> No person who . . . has been convicted of, or served any part of a prison term resulting from his conviction of, [certain enumerated crimes] . . . shall serve or be permitted to serve--
>      . . . .
>      (2) as an officer . . . of any labor organization,
>      . . . .
>
> during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later . . . .
>
> . . . .
>
> **(c) Definitions**
>
> For the purpose of this section--
>      (1) A person shall be deemed to have been "convicted" . . . from the date of the judgment of the trial court, <u>regardless of whether that judgment remains under appeal</u>.
>           . . . .
>
> (d) **Salary of person barred from labor organization office during appeal of conviction**
>
> Whenever any person--
>      (1) by operation of this section, has been barred from office . . . as a result of a conviction, and
>      (2) has filed an appeal of that conviction,
>
> any salary which would be otherwise due such person by virtue of such office or position, shall be placed in escrow by the individual employer or organization responsible for payment of such salary. Payment of such salary into escrow shall continue for the duration

officials must be removed from office upon entry of a judgment of conviction (i.e., at sentencing).  See 29 U.S.C. § 504(c).  If that had been the extent of the 1984 amendment, exonerated and non-exonerated officials alike no longer would have been entitled to wages during the pendency of their appeals.  Therefore, Congress also added subsection (d) to § 504, requiring that unions place the wages of a convicted official into an escrow account in the event that the official ultimately is exonerated. If the official is not exonerated, the wages revert back to the union.  If the official is exonerated, however, he is entitled to the wages, but, unlike the pre-1984 state of affairs, is barred from office in the interim.

Far from representing the significant, beneficial change in the rights of wrongfully convicted officials that Carson would have us ascribe to it, the escrow requirement added by the 1984 amendment simply maintains the status quo. Convicted-but-exonerated officials, both before and after 1984, are entitled to receive their wages during the pendency of their appeals.  But viewed as a whole, the 1984 amendment contained two

_____

> of the appeal . . . . Upon the final reversal of such person's conviction on appeal, the amounts in escrow shall be paid to such person.  Upon the final sustaining of such person's conviction on appeal, the amounts in escrow shall be returned to the individual employer or organization responsible for payments of those amounts.  Upon final reversal of such person's conviction, such person shall no longer be barred by this statute from assuming any position from which such person was previously barred.

29 U.S.C. § 504 (1988) (as amended) (emphasis added).

10

serious drawbacks for convicted union officials: (1) <u>non</u>-exonerated officials no longer are entitled to their wages during appeal; and (2) exonerated officials, although entitled to wages during the pendency of their appeals, are not permitted to work during that time. Accordingly, Carson's claim that Congress' 1984 amendment to § 504 evinces a special concern with "mitigat[ing] the harm of a wrongful conviction" is inaccurate.

**B.**

Since the 1984 amendment worked no positive change in Carson's rights as a wrongfully convicted official, his only plausible Supremacy Clause claim is that to the extent state-court decisions define the term "conviction" in § 8 of the WCA as a verdict of guilty, that definition has always been preempted by section 504 of the LMRDA. Indeed, prior to 1984, federal law permitted <u>all</u> convicted officials to remain in office until their appeals had been exhausted, which necessarily means that the conflict between § 8 and the pre-1984 version of § 504 was even more glaring. If Carson is correct, then § 8 presumably must yield to § 504 after 1984 since it should have yielded all along.

To prevail on the merits of his claim, however, Carson faces a nearly insurmountable hurdle in form of the Supreme Court's decision in <u>De Veau</u>, 363 U.S. at 144, 80 S. Ct. at 1146. As we noted above, <u>De Veau</u> specifically rejected a challenge to § 8 of the WCA as being inconsistent with the pre-1984 version of § 504 of the LMRDA, and two subsequent pre-1984 decisions, relying on <u>De Veau</u>, rejected the very claim Carson advances here. There are two potential paths around <u>De Veau</u> and the decisions relying

11

on it; Carson urges that we follow both. We consider each one in turn.

**1.**

Carson implies that De Veau should not apply here because it was decided in 1960 and it was not until 1981 that state and federal courts began to interpret the term "conviction" in § 8 of the WCA to mean a guilty verdict. See, e.g., International Longshoremen's Ass'n, 642 F.2d at 666; Local 1804, 428 A.2d at 1283. Thus, the argument continues, De Veau could not have foreclosed a claim of inconsistency between § 8 of the WCA and §504 that was essentially unforeseeable in 1960. While this argument has some logical appeal, De Veau's broad rationale requires that we reject it.

De Veau was a declaratory judgment action in which the plaintiffs alleged that § 8 of the WCA, through its rather severe disqualification provisions, unduly interfered with their rights under the National Labor Relations Act ("NLRA") to choose bargaining representatives. Plaintiffs also alleged that § 8's disqualification provisions were harsher than those contained in §504 of the LMRDA and, thus, the former was impliedly preempted by the latter. (The most glaring inconsistency was that § 8 provided for a lifetime bar of convicted officials whereas § 504 required only a five-year disqualification.) After exhaustively tracing the developments leading to the submission to and approval by Congress of the WCA and its enactment by the New York and New Jersey legislatures, Justice Frankfurter, writing for the plurality, rejected the preemption claim regarding the NLRA. He

12

did so on the ground that Congress, in approving the WCA, had expressly consented to supplemental legislation like § 8 even though it technically was not part of the compact. De Veau, 363 U.S. at 150-54, 80 S. Ct. at 1150-51.

Turning to the plaintiffs' contention that § 8 conflicted with the federal policy codified in § 504 of the LMRDA, Justice Frankfurter observed two separate reasons strongly militating against a finding of preemption. The first was that

> Congress itself has . . . imposed the same type of restriction upon employees' freedom to choose bargaining representatives as New York seeks to impose through § 8, namely, disqualification of ex-felons for union office[. That] is surely evidence that Congress does not view such a restriction as incompatible with its labor policies.

Id. at 156, 80 S. Ct. at 1152. Significantly, the general policy of excluding convicted officials, not specific claimed inconsistencies, was the focus of the High Court's preemption analysis.

Responding to the plaintiffs' specific contention that "any state disablement from holding union office on account of a prior felony conviction, such as § 8, which has terms at variance with § 504(a), is impliedly barred by it," id., Justice Frankfurter concluded that

> [j]ust the opposite conclusion is indicated by the 1959 Act, which reflects congressional awareness of the problems of pre-emption in the area of labor legislation, and which did not leave the solution of questions of pre-emption to

13

> inference.  When Congress meant
> pre-emption to flow from the 1959
> Act it expressly so provided.
> Sections 205(c) and 403 . . . are
> express provisions excluding the
> operation of state law,
> supplementing provisions for new
> federal regulation.  No such pre-
> emption provision was provided in
> connection with § 504[a].  That
> alone is sufficient reason for not
> deciding that § 504(a) pre-empts §
> 8 of the [WCA].

Id. at 156, 80 S. Ct. at 1152-53 (emphasis added).  The plurality then cited to a provision in the LMRDA that, in its view, expressed a clear congressional intent to allow state legislation such as §8 of the WCA:

> And to make the matter conclusive,
> § 603(a) is an express disclaimer
> of pre-emption of state laws
> regulating the responsibilities of
> union officials, except where such
> pre-emption is expressly provided
> in the 1959 Act. . . . In view of
> this explicit and elaborate
> treatment of pre-emption in the
> 1959 Act, no inference can possibly
> arise that §8 is impliedly pre-
> empted by §504(a).

Id. at 157, 80 S. Ct. at 1153.

The ratio decidendi of the De Veau plurality's decision is that § 8 and § 504(a) are compatible precisely because they both are aimed at removing criminal elements from union office; any friction between the two is constitutionally permissible because §504 lacks specific preemption language.  We understand De Veau, therefore, to reject a "facial" challenge to any and all claimed inconsistencies between § 8 of the WCA and § 504 of the

14

LMRDA. Standing alone, this would appear to mandate an affirmance since no preemption language has been added to section 504 since _De Veau_ was decided.

**2.**

Carson urges, however, that to the extent that _De Veau_'s holding purports to bar any prospective claim of inconsistency between § 8 of the WCA and § 504 of the LMRDA, it was a plurality opinion and, thus, _De Veau_ and its progeny do not stand as a _per se_ bar to his preemption claim. While this argument also has some measure of surface appeal, after reading Justice Brennan's opinion concurring in the judgment, we are not persuaded.

We would agree with Carson had Justice Brennan refused to join Justice Frankfurter's opinion because he believed that its reliance on the lack of express preemption language would needlessly bring within its sweep all future claims of inconsistency between § 8 and § 504 and impliedly reject them. But that is not why Justice Brennan wrote separately. On the contrary, Justice Brennan agreed with the plurality's result precisely because Congress expressly had consented to parallel state legislation in enacting the LMRDA:

> Mr. Justice BRENNAN is of the opinion that . . . the [LMRDA] explicitly provides that it shall not displace such legislation of the States. He believes that New York's disqualifications of ex-felons from waterfront union office, on all the circumstances, and as applied to this specific area, is a reasonable means for

15

achieving a legitimate state aim .
. . .

De Veau, 363 U.S. at 160-61, 80 S. Ct. at 1155 (Brennan, J., concurring in the judgment).  This language essentially mirrors the second reason Justice Frankfurter offered for finding that § 504 did not preempt § 8.

Justice Brennan's concurrence suggests at most a disagreement with the plurality's methodology in rejecting the plaintiff's initial contention that § 8 was preempted by the NLRA. By noting that the LMRDA itself was sufficient evidence of a congressional intent not to preempt § 8, Justice Brennan implied that there was no need to conclude, as had the plurality, that in approving the WCA Congress gave its express imprimatur to state legislation like § 8 (which was not technically part of the compact).  Because the NLRA is not offered as a basis for preemption in this case, the concurrence's differences with the plurality on that issue are irrelevant.  Quite simply, five Justices agreed in De Veau that in enacting the LMRDA in 1959, Congress explicitly assented to the enactment of parallel state restrictions on convicted union workers except where it expressly had provided to the contrary.  Accordingly, Carson's claim that De Veau lacks precedential value because it was a plurality opinion is without merit.

Finally, we observe that in 1984 the Supreme Court specifically reaffirmed De Veau's basic premise that the LMRDA expressed a clear congressional intent not to preempt state regulation of union officials.  Brown v. Hotel & Restaurant

16

Employees & Bartenders Int'l Union Local 54, 468 U.S. 491, 506, 104 S. Ct. 3179, 3188 (1984) ("[Section] 504 itself makes clear that Congress did not seek to impose a uniform federal standard on those who may serve as union officials.").  Although Brown dealt with a claim that New Jersey's regulation of unions in the casino industry conflicted with the NLRA, much of the Brown Court's analysis was devoted to comparing New Jersey's regulatory scheme to the New York version of § 8 of the WCA scrutinized in De Veau.  In the process, Brown reaffirmed De Veau's refusal to find § 8 preempted by federal labor policy.  Since De Veau controls, we conclude that Congress' refusal to add any specific preemption language to § 504 since De Veau was decided compels an affirmance.

The district court's order of April 7, 1995, dismissing Carson's claims against the Waterfront Commission will be affirmed.