**LOCAL NO. 46 METALLIC LATHERS UNION AND REINFORCING IRON WORKERS OF NEW YORK CITY AND VICINITY et al., Plaintiffs,**

v.

**TRATAROS CONSTRUCTION, INC. et al., Defendants.**

**No. 95 Civ. 2508(WK).**

United States District Court, S.D. New York.

March 20, 1996.

Richard Markowitz, Markowitz & Richmond, Philadelphia, PA, for Plaintiffs.

John Simoni, Goetz, Fitzpatrick & Flynn, New York City, for Defendants.

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

This is a case brought by plaintiffs union trust funds ("plaintiff funds") for the Local 46 Metallic Lathers Union etc. ("the Union") for recovery of unpaid union fringe benefits. They allege that their claims arise out of work performed on a construction project run by the New York City School Construction Authority ("the project"). Defendants are the prime contractor on the project, Trataros Construction Inc. ("defendant Trataros"), the majority shareholder of defendant Trataros, Costas Trataros ("Mr. Trataros"), the surety on a public improvement bond on which plaintiffs are suing, Seaboard Surety Company ("defendant Seaboard"), and the subcontractor on the project, Construction Building Services ("CBS"). Defendants Trataros, Mr. Trataros and Seaboard ("the moving defendants") have moved to dismiss.

### BACKGROUND

The facts as alleged by plaintiffs are as follows:

During the spring and summer of 1994, the Union and CBS were parties to a collective bargaining agreement in connection with a construction project for the New York School Construction Authority. Pursuant to that agreement, CBS, the subcontractor on the project, was obligated *inter alia* to make contributions to the plaintiff funds, in exchange for work performed by members of

the union on the construction project. The prime contractor on the project was defendant Trataros, but it was not a party to the collective bargaining agreement.

As prime contractor, defendant Trataros was required under New York State Finance Law to supply a labor and material payment bond. Such bond had to guarantee "prompt payment of monies due to all persons furnishing labor or materials to the contractor or his subcontractor in the prosecution of the work provided for in such contract." New York State Finance Law § 137(1). Defendant Trataros posted such a bond, issued by defendant Seaboard. The New York City School Construction Authority was obligee. Defendant Trataros was the named principal on the bond.

On or about July 19, 1994, CBS, for reasons that are unknown, abandoned its work on the project and stopped making contributions to the plaintiff funds. Defendant Trataros stepped into the role of employer and hired union workers to continue working on the project. When union officials expressed concerns about contributions to the funds, defendant Trataros gave assurances that it would assume responsibility for the contributions.

Attached to plaintiffs' complaint is a letter dated June 2, 1994, in which defendant Trataros seeks to assure the plaintiff funds that the provisions of the subcontract agreement between defendant Trataros and CBS "provide for the issuance of two-party checks against funds accruing thereunder to discharge valid debts incurred during its performance."

Defendant Trataros made benefit contribution payments on at least six occasions from April 26, 1994 to July 26, 1994 (some even before CBS stopped making its contributions to the plaintiff funds). Defendant Trataros made no contributions to plaintiff funds after July 26, 1994, despite the fact that union workers continued to work on the project until September 14, 1994.

As a result, on April 12, 1995, plaintiffs brought this action. Defendant Trataros is named in Count II, defendant Seaboard is named in Count III, and defendant Costas Trataros is named in Counts VII, VIII and IX.

Count II alleges a violation of 29 U.S.C. § 1145 of the ERISA statute by defendant Trataros; it also alleges a breach of contract claim against defendant Trataros, based on a written guarantee of payment; and a breach of contract claim against defendant Trataros based on an oral promise of payment.

Count III alleges a claim against defendant Seaboard Surety based upon § 137 of the New York State Finance Law.

Count VII asserts a violation of 29 U.S.C. § 1145 of the ERISA statute by defendant Costas Trataros by alleging the federal common law claim of greater than 50% ownership of defendant Trataros.

Count VIII asserts a state law claim of piercing the corporate veil by alleging that Costas Trataros is the "alter ego" of defendant Trataros.

Count IX alleges that Costas Trataros as one of the ten largest shareholders in defendant Trataros is personally liable under New York's Business Corporation Law § 630; it further alleges that Costas Trataros violated New York's Debtor and Creditor Law § 274.

We conducted oral argument on March 15, 1996. Defendant Trataros' principal contention was that the ERISA claim alleged in Count II should be dismissed because it was not an employer as that term is defined in 29 U.S.C.A. § 1002(5). We rejected that argument and denied the motion to dismiss for the reasons stated on the record.[1]

However, we granted, based on ERISA pre-emption, defendant Trataros' motion to dismiss all the state claims alleged against it

---

1. We did not rule on defendant Costas Trataros' motion to dismiss the ERISA claim against him personally. The only basis to find him personally liable under ERISA is a federal common law claim that as a greater than 50% owner of the corporation, he is personally liable for its debts. The Second Circuit has clearly held that an individual is not liable for corporate ERISA obligations solely by virtue of his role as a shareholder. *See Sasso v. Cervoni* (2d Cir.1993) 985 F.2d 49, 50. Accordingly, we dismiss the ERISA claim contained in Count VII against defendant Costas Trataros.

in Count II, and we similarly granted defendant Costas Trataros' motion to dismiss all the claims alleged against him in Counts VII, VIII and IX.

Defendant Seaboard advanced two basic reasons for dismissing the count against it. It argued first that the New York State Finance Law claim was pre-empted by ERISA; and second that the claim was untimely. We rejected the second argument on the ground that it presented an issue of fact. We reserved decision as to the first, to which we now turn.

### DISCUSSION

The standard for ERISA pre-emption is set forth at 29 U.S.C. § 1144(a) and provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter (iii) of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title.

Plaintiffs seek recovery from defendant Seaboard based on the public improvement payment bond issued by defendant Seaboard and posted by defendant Trataros. Section 137(3) of the New York State Finance Law, which required that the bond be posted, provides, in pertinent part:

> Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name.

As the briefs filed by the respective parties amply demonstrate, the meaning of the ERISA pre-emption statute as it relates to state surety statutes has given rise to a great deal of litigation. However, it seems to us that the only presently relevant authorities are the Supreme Court's decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (hereinafter *"Blue Cross"*), and the Second Circuit's interpretation of that decision in *Greenblatt v. Delta Plumbing & Heating Corp.* (2d Cir.1995) 68 F.3d 561.

In the latter case, the Second Circuit recognized that the term "relate to" should not be extended to absurd extremes. It noted at page 574 that:

> state surety law makes no explicit reference to ERISA plans and does not bind the hands of ERISA trustees or regulate them in any fashion. Nor does the application of state surety law to bonds ensuring ERISA obligations threaten a "multiplicity of regulation" that would interfere with "the nationally uniform administration of employee benefit plans." *Blue Cross,* —— U.S. at ——–——, 115 S.Ct. at 1677–78. At most, some provision of state surety law might affect the collectibility of funds owed to a plan. A law having only such an indirect effect on plan assets is exactly the kind that *Blue Cross* [and another earlier Supreme Court case] save from the preemptive sweep of § [1144(a)].

It seems to us that the quoted language reflects the Supreme Court's final observation in *Blue Cross* to the effect that state statutes and regulations which do trigger ERISA pre-emption are those that produce "acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of coverage or effectively restrict its choice of insurers." —— U.S. at ——, 115 S.Ct. at 1683.

The fatal flaw in the cases cited by the defendants is that they pre-date the Second Circuit decision in *Greenblatt,* which, as we view it, compels the finding that a claim under § 137 of the New York State Finance Law does not trigger ERISA pre-emption. Accordingly, defendants' motion to dismiss Count III of the complaint against defendant Seaboard is denied.

SO ORDERED.