691 A.2d 339

BOARD OF TRUSTEES OF OPERATING ENGINEERS LOCAL 825 FUND SERVICE FACILITIES, PLAINTIFF–RESPONDENT, v. L.B.S. CONSTRUCTION CO., INC.; AND "A" COMPANY; AND "B" COMPANY, FICTITIOUS COMPANIES, DEFENDANTS, AND FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, A CORPORATION, DEFENDANT–APPELLANT.

BOARD OF TRUSTEES OF OPERATING ENGINEERS LOCAL 825 FUND SERVICE FACILITIES, PLAINTIFF–RESPONDENT, v. INTERNATIONAL FIDELITY INSURANCE COMPANY, A CORPORATION, DEFENDANT–APPELLANT.

Argued January 6, 1997—Decided April 9, 1997.

*Thomas J. Demski* argued the cause for appellant International Fidelity Insurance Company (*Sills Cummis Zuckerman Radin Tischman Epstein & Gross,* attorneys; *Mr. Demski* and *Mark E. Duckstein,* on the briefs).

*Joseph C. Glavin, Jr.,* argued the cause for appellant First Indemnity of America Insurance Company.

*N. Janine Dickey* argued the cause for respondent Board of Trustees of Operating Engineers Local 825 Fund Service Facilities (A–72).

*Albert G. Kroll* argued the cause for respondent Board of Trustees of Operating Engineers Local 825 Fund Service Facilities (A–73) (*Kroll & Heineman,* attorneys).

*Lauretta A. Rush–Masuret* argued the cause for *amicus curiae* The Surety Association of America.

*James R. Zazzali* argued the cause for *amici curiae* New Jersey State Carpenter Benefit Funds, Carpenter Local No. 6 Benefits Fund, Laborers Local Nos. 472 and 172 Welfare and Pension Funds, Teamsters Local 408 Pension and Welfare Funds, and Laborers Local Nos. 72, 156, 569 and 711 Welfare and Pension Funds (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr. Zazzali* and *Kenneth I. Nowak,* on the letter briefs).

O'HERN, J.

These appeals concern the liability of a surety company to pay contributions into fringe benefit plans for employees on public works projects when the employer-principal defaults on its payments to the plans. The primary issue is whether federal employee benefit law preempts provisions of the New Jersey Public Works Bond Act, *N.J.S.A.* 2A:44–143 to 147 (Bond Act or Act) that require contractors to post bonds for payment for labor performed on public works projects.

We discuss the facts of each case separately before proceeding to an analysis of the common issues.

I

*International Fidelity*

Board of Trustees of Operating Engineers, Local 825, had a collective bargaining agreement with J. Gram Construction Co. that required Gram to make contributions, on behalf of the members of Local 825 whom it employed, to various pension, health, and welfare funds established pursuant to the federal Employee Retirement Income Security Act, 29 *U.S.C.* § 1001 to 1461 (ERISA). Local 825 administered the funds on behalf of its members.

Gram hired Local 825 members in connection with various public works projects in which Gram was engaged. Pursuant to the Bond Act, Gram procured surety bonds guaranteeing both performance of the work and the full payment for labor and

materials supplied on the jobs. Gram obtained the necessary bonds from International Fidelity Insurance Co. (IFIC).

In January 1994, Local 825 audited Gram's books and discovered that Gram had not paid $95,612.53 in contributions owed to the pension fund. The Local demanded payment by Gram of the past contributions. When Gram failed to pay, Local 825 began an action in the Law Division and obtained a default judgment against Gram for the amount owed. In January 1995, Local 825 began this action against IFIC, claiming that IFIC is responsible under the bonds IFIC issued on behalf of Gram to make all payments that Gram failed to make.

IFIC filed a motion to dismiss on the basis that ERISA preempts the Bond Act, and prevents a surety from being liable for a contractor's delinquent payment of fringe benefit contributions. The Law Division granted IFIC's motion and dismissed Local 825's complaint.

Local 825 appealed. The Appellate Division consolidated the case with the *First Indemnity* matter. It reversed the Law Division and reinstated Local 825's complaint. 287 *N.J.Super.* 498, 671 *A*.2d 596 (App.Div.1996). It reasoned that although the trial courts' opinions had been in accord with the weight of authority at the time they were issued, a new group of cases had been decided in the previous year that clarified the reach of ERISA preemption to sureties' liability under bonds issued to a contractor.

We granted IFIC's petition for certification. 146 *N.J.* 67, 679 *A*.2d 654 (1996).

### First Indemnity

Local 825 had a collective bargaining agreement with L.B.S. Construction Co., Inc. (LBS) similar to that which it had with Gram. This collective bargaining agreement included various pension, benefit, and welfare funds established pursuant to ERISA, and required LBS to pay contributions to the various funds.

Pursuant to the Bond Act, LBS obtained bonds for labor and materials from First Indemnity of America Insurance Co.

An audit by Local 825 of LBS' books revealed a $73,624.94 underpayment of contributions to the trust funds. In August 1992, Local 825 filed a complaint in the Law Division against LBS for payment of the delinquency. LBS did not file an answer, apparently because it was involved in bankruptcy proceedings.

Local 825 filed an amended complaint in May 1993, and named First Indemnity as a defendant. Local 825 alleged First Indemnity was responsible for contribution to the trust funds because of LBS' default. First Indemnity moved for summary judgment on the grounds that ERISA preempted Local 825's cause of action. In July 1994, the Law Division granted First Indemnity's motion.

Local 825 appealed. The Appellate Division reversed the Law Division and reinstated Local 825's complaint on the same basis as in the *International Fidelity* matter. 287 *N.J.Super.* 498, 671 *A.*2d 596 (App.Div.1996).

We granted First Indemnity's petition for certification. 146 *N.J.* 68, 679 *A.*2d 654 (1996).

## II

## ERISA

### A.

The United States Supreme Court has set forth the history and background of ERISA in several decisions. We provide a brief discussion here.

ERISA is a comprehensive regulatory scheme that Congress enacted after years of studying private employee benefit plans. *Nolan v. Otis Elevator Co.,* 102 *N.J.* 30, 38, 505 *A.*2d 580, *cert. denied,* 479 *U.S.* 820, 107 *S.Ct.* 84, 93 *L. Ed.*2d 38 (1986). Congress enacted ERISA in 1974 "to protect participants of employee benefit plans and their beneficiaries from the abuses which previ-

ously existed in many retirement plans." Note, *ERISA: Preemption of State Health Care Laws and Worker Well–Being*, 4 *U. Ill. L.F.* 825 (1981) (footnotes omitted). The statute imposes participation, funding, and vesting requirements on private employee benefit plans. Employee benefit plans include both pension plans and health and welfare plans. ERISA also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for the plans. In addition, the statute provides civil and criminal penalties. *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 *U.S.* 359, 361 n. 1, 100 *S.Ct.* 1723, 1726 n. 1, 64 *L. Ed.*2d 354, 358 n. 1 (1980).

To guarantee uniformity in the enforcement of employee benefit plans, ERISA contains a sweeping preemption provision. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." 29 *U.S.C.* § 1144(a).

The leading case interpreting this provision is *Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 103 *S.Ct.* 2890, 77 *L. Ed.*2d 490 (1983). In *Shaw*, the Court held that ERISA preempted certain sections of New York's antidiscrimination laws concerning pregnancy benefits. The Court stated that a "law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 *S.Ct.* at 2900, 77 *L.Ed.*2d at 501. The Court further held that state laws covering subject matters beyond those covered by ERISA could also trigger preemption. *Id.* at 98, 103 *S.Ct.* at 2900, 77 *L.Ed.*2d at 501–02. *See also FMC Corp. v. Holliday*, 498 *U.S.* 52, 58, 111 *S.Ct.* 403, 407, 112 *L. Ed.*2d 356, 364 (1990) (stating ERISA preemption provision is "conspicuous for its breadth"). ERISA preempts state laws even when those laws are not specifically designed to affect ERISA-covered plans or affects them indirectly. *District of Columbia v. Greater Washington Bd. of Trade*, 506 *U.S.* 125, 113 *S.Ct.* 580, 121 *L. Ed.*2d 513 (1992).

We have addressed the preemptive effect of ERISA on New Jersey laws in several cases and, consistent with *Shaw*, have interpreted the preemption provision to give full effect to ERISA's

purposes. In *Nolan, supra,* 102 *N.J.* 30, 505 *A.*2d 580, we held that ERISA preempted claims of age discrimination in an employee benefit plan when the employees brought actions under the New Jersey Law Against Discrimination (LAD) after the federal time requirement for such actions had not been met. The parties had agreed that the LAD "related to" an employee benefit plan. The issue before the Court was whether the age-discrimination claim fell within an exception to ERISA preemption that prohibits preemption when enforcement would "impair" a law of the United States. 29 *U.S.C.* § 1144(d). *See Nolan, supra,* 102 *N.J.* at 39, 505 *A.*2d 580. Although acknowledging the strong state concern for ending age discrimination, we held that such concern must yield to the "paramount federal interest" in uniform administration of employee benefit plans expressed by ERISA and Supreme Court precedent. *Id.* at 48, 505 *A.*2d 580.

However, when a state law that may have the potential to interfere with ERISA is designed to address a unique local problem, and when Congress is willing to tolerate that potential interference, we have found state laws to survive ERISA preemption. In *Local 1804, Int'l Longshoremen's Ass'n v. Waterfront Comm'n,* 85 *N.J.* 606, 428 *A.*2d 1283 (1981), the Court held that a provision of the Waterfront Commission Act defining "convicted" for misconduct as effective upon a trial court judgment was not preempted by a similar ERISA provision that defined "convicted" as effective only after the exhaustion of all appeals. *Id.* at 616, 428 *A.*2d 1283. The Court stated that congressional recognition of New Jersey's interest in reducing waterfront crime did not conflict with the uniform protection of benefit plans. *Ibid.*

More recently, we have suggested that ERISA would not preempt state law regarding unfunded employee vacation benefits, because of the "illogic" of finding that Congress intended to preempt a state law without providing any correlative federal standards. *Erich v. GAF Corp.,* 110 *N.J.* 230, 237, 540 *A.*2d 518 (1988), *cert. denied,* 490 *U.S.* 1034, 109 *S.Ct.* 1930, 104 *L. Ed.*2d 402 (1989). *See also In re 1115 Legal Service Care,* 110 *N.J.* 344, 349

n. 2, 541 A.2d 673 (1988) (stating purpose to preempt state laws tangentially related to employee benefit plans cannot be found in ERISA).

The Appellate Division correctly perceived a trend in recent federal precedent that has qualified the broad language of *Shaw* and has limited ERISA preemption of generally applicable state laws. 287 *N.J.Super.* at 507–08, 671 *A.2d* 596. This trend supports the reasoning of *Local 1804, supra,* 85 *N.J.* 606, 428 *A.*2d 1283, and *Erich, supra,* 110 *N.J.* 230, 540 *A.*2d 518.

The major case elaborating this trend is *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 *U.S.* 645, 115 *S.Ct.* 1671, 131 *L.Ed.*2d 695 (1995). In *Travelers,* the United States Supreme Court interpreted provisions of the New York Public Health Law that imposed surcharges on patients covered by commercial insurers (but not those covered by Blue Cross or Blue Shield plans) and on certain health maintenance organizations (HMOs) according to the number of Medicaid recipients each enrolled. The Court held that the laws did not "relate to" employee benefit plans under ERISA, and so were not preempted. *Travelers, supra,* 514 *U.S.* at ——, 115 *S.Ct.* at 1674, 131 *L.Ed.*2d at 701.

The Court stated that although ERISA preemption is "clearly expansive," to interpret the language to its furthest extent would render the reach of the provision limitless. *Id.* at ——, 115 *S.Ct.* at 1677, 131 *L.Ed.*2d at 705. The Court determined that the basic thrust of the preemption provision was to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at ——, 115 *S.Ct.* at 1677–78, 131 *L.Ed.*2d at 706. The New York public health law did not promote multiple regulatory schemes or provide alternate enforcement mechanisms relating to ERISA plans. *Id.* at ——, 115 *S.Ct.* at 1678, 131 *L.Ed.*2d at 707. The Court rejected the argument that laws indirectly affecting ERISA plans, without more, could be preempted. *Id.* at ——, 115 *S.Ct.* at 1679, 131 *L.Ed.*2d at 708. An indirect economic effect, however, that is so acute as to force

changes in an ERISA plan can trigger preemption. *Id.* at ——, 115 *S.Ct.* at 1683, 131 *L.Ed.*2d at 713. Preemption does not occur " 'if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " *Id.* at ——, 115 *S.Ct.* at 1680, 131 *L.Ed.*2d at 708–09 (quoting *District of Columbia, supra,* 506 *U.S.* at —— n. 1, 113 *S.Ct.* at 583 n. 1, 121 *L.Ed.*2d at 520 n. 1).[1]

More recently, in *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 *U.S.* ——, 117 *S.Ct.* 832, 136 *L.Ed.*2d 791 (1997), the Court reaffirmed the trend initiated in *Travelers.* It found that ERISA did not preempt a California statute permitting contractors to pay laborers enrolled in an apprentice program less than the prevailing wage. The Court observed that the statute was enacted before ERISA and dealt with matters traditionally subject to local regulation and not within ERISA's concern for reporting, disclosure, and fiduciary responsibilities. In his concurrence, Justice Scalia suggested that the time had come to acknowledge that the criteria used in earlier cases for preemption had been abandoned, and that "our first take on this statute was wrong; that the 'relate to' clause of the pre-emption provision is meant, not to set forth a test for pre-emption, but rather to identify the field in which ordinary [principles of] preemption [apply]—namely, the field of laws regulating 'employee benefit plans' " described in the statute itself. *Id.* at ——, 117 *S.Ct.* at 843, 136 *L.Ed.*2d at 806. Any other understanding of the "related to" language is "doomed to failure, since, as many a

---

[1] *Ingersoll–Rand Co. v. McClendon,* 498 *U.S.* 133, 111 *S.Ct.* 478, 112 *L. Ed.*2d 474 (1990) presaged this trend. Although *Ingersoll–Rand* held that ERISA preempted a wrongful discharge claim because it involved an allegation that the discharge was based on the employer's desire to avoid contributions to an ERISA-regulated fund, the Court stated that the analysis would proceed differently had the claim been based on "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan," or when the existence of an ERISA plan was not a "critical factor" in establishing liability. *Id.* at 139, 111 *S.Ct.* at 483, 112 *L.Ed.*2d at 484. *See generally* Karen A. Jordan, Traveler's Insurance: *New Support for the Argument to Restrain ERISA Preemption,* 13 *Yale J. on Reg.* 255 (1996).

curbstone philosopher has observed, everything is related to everything else." *Ibid.*

## B.

Several lower federal courts have applied *Travelers* to the issue of employee fringe benefit bonds. In *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 *F.*3d 561 (2d Cir.1995), the union sued a contractor for failing to make timely fringe benefit payments. The contractor (Delta) filed for bankruptcy, and the union amended its complaint to include Delta's surety, which had issued a bond to Delta covering the fringe benefit payments. The Second Circuit held that ERISA did not preempt the union's claim against the surety.[2]

The court found that New York common law concerning surety liability did not mandate employee benefit structures or provide alternate enforcement mechanisms that would trigger preemption under *Travelers.* New York surety law made no reference to ERISA, did not conflict with any ERISA enforcement mechanism, did not touch on any of the rights or duties incident to the ERISA plan, and did not conflict with any cause of action under ERISA. *Greenblatt, supra,* 68 *F.*3d at 574–75. The union's cause of action against the surety on the bond is "but a 'run-of-the-mill' state law claim," similar to a tort or contract action. *Id.* at 574 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.* 486 *U.S.* 825, 833, 108 *S.Ct.* 2182, 2187, 100 *L.Ed.*2d 836, 846 (1988)). By analogous reasoning, United States District Judge Whitman Knapp interpreted *Travelers* and *Greenblatt* to hold that ERISA did not preempt claims against a surety that had issued public improvement payment bonds to a contractor pursuant to a New York statute. *Local 46, Metallic Lathers Union v. Trataros Constr., Inc.,* 920 *F.Supp.* 55 (S.D.N.Y.1996). *See also Bleiler v.*

---

[2] Procedurally, the court, finding no ERISA preemption, held that the district court did not have subject-matter jurisdiction and dismissed the case. Although "counterintuitive," the ERISA preemption provision can create federal jurisdiction. *Greenblatt, supra,* 68 *F.*3d at 571.

*Cristwood Constr., Inc.,* 72 *F.*3d 13 (2d Cir.1995) (applying *Greenblatt* to surety insuring employer under public bond statute).

The Third Circuit has reached similar conclusions. *United Wire, Metal & Machine Health & Welfare Fund v. Morristown Memorial Hosp.,* 995 *F.*2d 1179 (3d Cir.1993) upheld portions of the New Jersey Health Care Facilities Planning Act against an ERISA preemption challenge. The Planning Act was a comprehensive statute establishing hospital rates. The court held that ERISA did not preempt the Act, even though the Act would have an economic effect on the ERISA plans, in the form of increased costs. *Id.* at 1193.

In *Ragan v. Tri–County Excavating, Inc.,* 62 *F.*3d 501 (3d Cir.1995), Judge Garth, writing for the court, found that an action by a union welfare fund on a privately-arranged bond was not preempted because its cause of action did not rely on or single out ERISA plans. *Id.* at 511. The court stated:

> Here, the district court need only determine [the surety's] obligations under the Bond. It need make no inquiry into the validity or status of the funds (or indeed whether they are ERISA funds), nor need it explore [the surety's] motives regarding employee benefits. The fact that the claimant ... happens to be an ERISA fund is not the kind of critical factor in establishing liability that prompt[s] preemption ...
>
> [*Ibid.* (internal quotations and citation omitted.)]

The Third Circuit distinguished its earlier decision in *Bricklayers Int'l Union, Local 33 Benefit Funds v. America's Marble Source, Inc.,* 950 *F.*2d 114 (3d Cir.1991), which found a portion of the New Jersey Construction Workers' Fringe Benefit Security Act preempted, because that law was "specifically designed to affect employee benefit plans." *Ragan, supra,* 62 *F.*3d at 511 n. 6 (citing *Bricklayers, supra,* 950 *F.*2d at 117). In *Ragan,* the action by the union fund was available to it without regard to the existence of the ERISA statutory framework.[3] *See also Keystone Chapter,*

---

[3] Both *Greenblatt, supra,* 68 *F.*3d at 575, and *Ragan, supra,* 62 *F.*3d at 512, found that a surety is not an "employer" as defined by ERISA, and so ERISA requirements for employers to fund benefit plans are not applicable to them and do not provide or negate a cause of action. *See 29 U.S.C.* § 1002(5) (defining

*Associated Builders & Contractors, Inc. v. Foley*, 37 *F.*3d 945 (3d Cir.1994) (holding Pennsylvania Prevailing Wage Act not preempted and could set minimum wages and option to contribute to employee benefit plans, but may not refer to ERISA plans or accord them special treatment), *cert. denied,* —— *U.S.* ——, 115 *S.Ct.* 1393, 131 *L. Ed.*2d 244 (1995).

We acknowledge the existence of other precedent finding preemption of actions by unions or union benefit plans against sureties for payments to fringe benefit or wage funds. *See, e.g., Williams v. Ashland Eng'g Co., Inc.*, 45 *F.*3d · 588 (1st Cir.) (preempting Massachusetts public bond law that specifically referred to ERISA-governed plans and provided a special source of recovery for unpaid contributions), *cert. denied,* —— *U.S.* ——, 116 *S.Ct.* 51, 133 *L. Ed.*2d 16 (1995); *Electrical Workers Health & Welfare Trust v. Marjo Corp.*, 988 *F.*2d 865 (9th Cir.1992) (disavowing pre-*Travelers* precedent and stating ERISA preempted action against surety on bond). Lower federal courts have also found preemption of laws that mention employee benefit plans or create causes of action under circumstances ERISA does not permit. *See Plumbing Indus. Bd. v. L & L Masons, Inc.*, 927 *F.Supp.* 645 (S.D.N.Y.1996) (invalidating section of New York Lien Law in action against contractor for subcontractor's default, and holding Lien Law created ERISA payment obligation and explicitly mentioned plans); *Blackburn v. Iversen*, 925 *F.Supp.* 118 (D.Conn.1996) (invalidating Connecticut law making officers and directors liable for corporate default on employee benefit plan payments); *Burgio & Campofelice, Inc. v. New York State Dep't of Labor*, 914 *F.Supp.* 931 (W.D.N.Y.1996) (distinguishing *Travelers* and *Greenblatt* and holding ERISA preempted New York law setting wage supplements because law holding contractor liable for subcontractor's default law related to ERISA plans), *vacated and remanded*, 107 F.3d 1000, 1997 WL 89121 (2d Cir. March 4, 1997); *Minnesota Chamber of Commerce & Indus. v. Hatch*, 672

---

"employer" under ERISA; 29 *U.S.C.* § 1145 (requiring employer to make ERISA benefit payments).

*F.Supp.* 393 (D.Minn.1987) (holding Minnesota statute requiring bonds for payment of employee health benefits preempted because it interfered with federal control over plan administration).

Several state courts have found no preemption of claims for employee fringe benefits in circumstances similar to those presented here. *See Eacott v. Insurance Co. of North America,* 40 *Conn.App.* 777, 673 *A.*2d 587 (1996) (reversing lower court and holding, based on *Bleiler, supra,* action by union funds against surety based on labor and material payment bond issued pursuant to statute not preempted); *Hawai'i Laborers' Trust Funds v. Maui Prince Hotel,* 81 *Hawai'i* 487, 918 *P.*2d 1143 (1996) (upholding mechanics' lien law in action by trust funds to collect delinquent contribution because no clear intention in ERISA to preempt traditional areas of state police power); *Seaboard Sur. Co. v. Indiana State Dist. Council of Laborers & Hod Carriers Health & Welfare Fund,* 645 *N.E.*2d 1121 (Ind.Ct.App.1995) (rejecting preemption of state law requiring fringe benefit bonds because law was over a century old and was within area of traditional state authority; did not affect relations among parties to ERISA plans; and effect on plans, if any, was incidental); *Carpenters Local 261 Health & Welfare Fund v. National Union Fire Ins.,* 686 *A.*2d 1373 (Pa.Commw.Ct.1996) (following *Ragan* and holding no preemption of action under public bond law because law not related to ERISA plans or their enforcement). *But see Operating Engineers Pension Trust v. Insurance Co. of the West,* 35 *Cal.App.*4th 59, 42 *Cal.Rptr.*2d 1 (preempting third-party beneficiary claim against surety based on payment and performance bonds because cause of action merely supplemented ERISA remedies), *cert. denied,* —— *U.S.* ——, 116 *S.Ct.* 569, 133 *L. Ed.*2d 493 (1995).

Generally, state courts that have found ERISA preemption have considered laws that create additional causes of action against parties that have no contractual obligation to ERISA plans or laws that specifically name ERISA plans. *See, e.g., Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 *Wash.*2d

565, 870 *P.*2d 960 (1994) (en banc) (finding preemption of state statute requiring contractor to guarantee subcontractor's obligations, because such law potentially funds benefit plans through additional enforcement mechanism other than ERISA); *Carpenters Southern Cal. Administrative Corp. v. El Capitan Dev. Co.,* 53 *Cal.*3d 1041, 282 *Cal.Rptr.* 277, 811 *P.*2d 296 (preempting state law that created liens on real property in favor of trust funds in amount equal to fringe benefit contributions owed to funds because law singled out ERISA funds for special treatment and by regulating ERISA funds through additional funding mechanism), *cert. denied,* 502 *U.S.* 963, 112 *S.Ct.* 430, 116 *L. Ed.*2d 450 (1991); *Prestridge v. Shinault,* 552 *So.*2d 643 (La.Ct.App.1989) (finding preemption of state law creating cause of action for trustees of benefit plan to enforce terms of health and welfare benefits plan), *writ denied,* 559 *So.*2d 131 (La.1990).

There is thus a thin line between claims for payment to employee fringe benefit plans that are preempted by ERISA and those that are not. The sureties argued before us that the bonds were issued pursuant to a statutory requirement, and therefore *Greenblatt* and *Ragan* do not apply because the causes of action involved there arose from common-law breaches of contract rather than from legislation requiring that public projects be bonded.

We find the distinction unconvincing. ERISA does not make such a distinction, and the analysis of the federal courts does not turn on the possible difference between a publicly-required bond and one entered into voluntarily. *See Greenblatt, supra,* 68 *F.*3d at 574 (equating causes of action under state surety law with common-law actions for purposes of ERISA preemption analysis); *Bleiler, supra,* 72 *F.*3d at 16 (applying *Greenblatt* to Connecticut bond statute).

The lawsuits are common-law actions on contracts the employer made as a condition for obtaining a public construction contract. They do not represent actions that undermine the set of remedies ERISA provides to beneficiaries under its "comprehensive civil enforcement scheme." *Pilot Life Ins. Co. v. Dedeaux,* 481 *U.S.* 41,

54, 107 *S.Ct.* 1549, 1556, 95 *L. Ed.*2d 39, 52 (1987) (preempting common-law claims of tortious interference and fraud in withholding benefits from plan because such claims interfered with ERISA civil remedies); *Plumbing Indus. Bd., supra,* 927 *F.Supp.* at 648 (preempting lien law because it created obligation for ERISA contributions when no independent basis for obligation existed).

The State must be neutral concerning the payment of fringe benefits. New Jersey's Bond Act does not by its terms require such payments. A contractor may decide to employ union or non-union labor. *Tormee Constr., Inc. v. Mercer Cty. Improvement Auth.,* 143 *N.J.* 143, 669 *A.*2d 1369 (1995) (holding public agencies could not restrict public-construction projects to members of particular labor unions or to union labor only). In short, it is the contractor who has created the obligation. The Bond Act is both ERISA-neutral and union-neutral. Like the vineyard owner in the parable, the contractor is being asked to pay only what was promised to the workers. *See In re San Juan Dupont Plaza Hotel Fire Litigation,* 56 *F.*3d 295, 310 (1st Cir.1995).

To hold otherwise would lead to paradoxical results. For example, employees paid solely in cash that covered their benefit needs would be able to recover against the sureties because of the provisions in the bonds covering labor performed, but those paid in a combination of cash and fringe benefits would not be able to recover the latter. *Cf. Keystone, supra,* 37 *F.*3d at 959–60 (noting that allowing preemption under similar circumstances would create "disincentive" against awarding benefits). Such an interpretation would also permit nonunion employees, who did not have a collective bargaining agreement covering ERISA-regulated plans, to recover against the sureties, but prohibit union employees from pursuing their claims because they did have such plans.

We find ourselves in accord with *Dillingham, Travelers, Greenblatt,* and *Ragan* and our own earlier decisions; they represent the correct interpretation of the ERISA preemption provision. The Bond Act is a generally applicable law that functions without any reference to ERISA. *See Ingersoll–Rand, supra,* 498 *U.S.* at

139, 111 *S.Ct.* at 483, 112 *L. Ed.*2d at 484. It does not frustrate ERISA's goal of uniform plan administration, make reference to ERISA, conflict with ERISA enforcement mechanisms, or touch upon any of the rights or duties incident to ERISA plans. *See Greenblatt, supra,* 68 *F.*3d at 574–75; *Blackburn, supra,* 925 *F.Supp.* at 121. Cost-uniformity was "almost certainly not an object of [ERISA] preemption." *Travelers, supra,* 514 *U.S.* at ——, 115 *S.Ct.* at 1673, 131 *L.Ed.*2d at 709. That the Bond Act may cause the cost of doing business in New Jersey to be different from the cost in other states is not inconsistent with the goal of uniform supervision of employee benefit plans. *See United Wire, supra,* 995 *F.*2d at 1194.

The Bond Act has existed in various forms for almost eighty years, long before Congress adopted ERISA. *See L.* 1918, c. 75, § 1. *Cf. Seaboard, supra,* 645 *N.E.*2d at 1127 (finding age of law to support finding of no preemption). It was designed to protect public agencies, laborers, and material suppliers who work on public projects from the insolvency of a general contractor. *See Unadilla Silo Co. v. Hess Bros. Inc.,* 123 *N.J.* 268, 276–77, 586 *A.*2d 226 (1991); *Seaboard Sur. Co. v. Board of Chosen Freeholders,* 222 *N.J.Super.* 409, 418, 537 *A.*2d 310 (App.Div.), *certif. denied,* 111 *N.J.* 630, 546 *A.*2d 545 (1988). Like the provision in the Waterfront Act, the Bond Act and ERISA serve different purposes, although they both protect workers. *See Local 1804, supra,* 85 *N.J.* at 616, 428 *A.*2d 1283.

We hold that ERISA does not preempt suits by union trust funds against sureties that have issued bonds to employers for public works projects pursuant to the Bond Act. We therefore affirm the decision of the Appellate Division reinstating Local 825's complaints against IFIC and First Indemnity.

In a brief discussion, the Appellate Division found that "wages" include fringe benefits and stated, "[w]hen the bond includes the total of the workers' wages, there is no reason to require a separate bond for a portion of the same." 287 *N.J.Super.* at 509, 671 *A.*2d 596. Before us the sureties argued that this was an

unfair imposition because they had not bargained with the unions or the trust funds to include fringe benefits and because the language of the bonds did not include fringe benefit payments.

We hesitate to address the issue in generalities because the language of the bonds issued by IFIC to Gram differs from the language of the bonds issued by First Indemnity to LBS. Generally, both sets of bonds purport to cover the lawful claims of subcontractors, material suppliers, and laborers for labor performed or material supplied.

The basic question is whether the "labor performed" clauses in the bonds issued by First Indemnity and IFIC include payments into fringe benefit funds on behalf of the laborers. The Bond Act provides only:

> When public buildings or other public works or improvements are about to be constructed ... [the contracting public agency] shall require the payment and performance bond, as provided for by law, with an obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials ... used or consumed in [the project].
>
> [*N.J.S.A.* 2A:44–143a (1).]

As noted, the Act is neutral on the question of fringe benefits; it does not explicitly discuss the surety's responsibility to pay fringe benefit contributions. Historically, payments for all "labor performed" have been considered to include more than wages. *See United States ex rel. Sherman v. Carter*, 353 *U.S.* 210, 77 *S.Ct.* 793, 1 *L.Ed.*2d 776 (1957) (holding Miller Act provision insuring employer payment of "sums justly due" for labor performed not limited to wages). Sureties in New Jersey were aware of a practice of including fringe benefits within the definition of wages. *See Newark Laborers' Pension–Welfare Funds v. Commercial Union Ins. Co.*, 126 *N.J.Super.* 1, 312 *A.*2d 649 (App.Div.1973) (noting surety had paid benefit contributions owed, and holding that costs and attorney's fees were recoverable against surety in action to collect an employer's delinquent contributions).

In addition, some of the bonds disclaim the creation of third-party rights or any obligation for payment to any party other than the named obligee. The Bond Act provides that only the named

obligee, and any subcontractor performing labor or supplying materials to the project, may have a claim against the surety under the bonds. *N.J.S.A.* 2A:44–143b. Does the Bond Act preclude an action by one other than the named obligee (usually the contractor or the worker)? If so, would an amended complaint joining a class representative of the individual workers in the Local's actions against the sureties satisfy that requirement?

The issues involve the interplay between the Bond Act and the interpretation of the bonds' terms. In the IFIC matter, the surety did not file an answer to the complaint, moving instead for summary judgement on the ground of ERISA preemption. First Indemnity raised several procedural defenses to the claims. Because the trial courts held that ERISA preempted the Local's claims, they did not reach these issues.

The judgment of the Appellate Division reinstating the complaints is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER, O'HERN, GARIBALDI, STEIN and COLEMAN— 6.

*Opposed*—None.