CEMENT AND CONCRETE WORK-ERS DISTRICT COUNCIL WEL-FARE FUND, PENSION FUND, LEGAL SERVICES FUND AND ANNUITY FUND and Thomas Madera, in his fiduciary capacity as Administrator of the Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund, and Charles Dolcimascolo, as President of the Cement and Concrete Workers District Council, Plaintiffs,

v.

Anthony FRASCONE, Contractors Casualty and Surety Company, Trataros Construction, Inc., and Seaboard Surety Company, Defendants.

No. 97–CV–6633 (ILG).

United States District Court,
E.D. New York.

Sept. 24, 1999.

Sean L. O'Donnell, Joseph S. Kaming, Kaming & Kaming, New York City, for Plaintiffs.

Michael McDermott, Chris Georgoulis, Scotto, Georgoulis & Dockery, New York City, for Defendants.

Michael R. Strauss, Hollander, Strauss & Mastropietro, New York City.

## MEMORANDUM and ORDER

GLASSER, District Judge.

### BACKGROUND

Plaintiffs are four pension and benefits funds (the "Funds") maintained on behalf of the members of the Cement and Concrete Workers District Council (the "Union"), together with Thomas Madera, in his fiduciary capacity as the administrator of those funds, and Charles Dolcimascolo, President of the Union. On November 12, 1997, plaintiffs brought suit to recover contributions to the Funds owed under collective bargaining agreements with Sovereign Building Corp., and Anthony Frascone, as principal of Sovereign (the "Agreements").[1]

---

1. Sovereign is in bankruptcy and was never a defendant in this case, and Frascone, al-though having been served in this action, has not appeared, and is also, apparently, insol-

In their Complaint, Plaintiffs assert a claim against Frascone under Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2), for unpaid benefit contributions, plus statutory damages and interest, attorneys' fees, and costs.[2] (Complaint at ¶ 19.) Plaintiffs also assert a claim against Contractors Casualty and Surety Company ("CCSC") based on a surety bond issued by Contractors Casualty in favor of Sovereign in the amount of $10,000, insuring Sovereign's obligations to contribute to the Funds under the Agreements.[3] Finally, plaintiffs assert claims against Trataros Construction, Inc., and Seaboard Surety Company, based on the provisions of a surety bond issued by Seaboard, which will be discussed below. Trataros was the general contractor on a public improvement contract with the New York City Housing Authority for the rehabilitation of the Williamsburg Housing Project in Brooklyn, New York. Sovereign was a subcontractor with Trataros on that project, and it was for the purpose of fulfilling obligations under that subcontract that Sovereign entered into the Agreements (to which, however, neither Trataros nor Seaboard was a party).

Trataros and Seaboard advance several defenses. First, they argue that plaintiffs' claims against them are premised on a provision of the New York State Finance Law that is subject to preemption under ERISA. They also assert a lack of subject matter jurisdiction inasmuch as the ERISA-derived federal question in the case has either been defaulted (due to Frascone's failure to appear), or has been rendered moot (due to an anticipated settlement with Frascone's surety, CCSC).[4] Defendants argue further that even absent a finding of preemption, and assuming jurisdiction is retained, they have defenses based on the Union's breach of the Agreements, and the plaintiffs' failure to give timely notice of deficiencies accruing under the first of the Agreements.

Plaintiffs here move for summary judgment on their claims against Trataros and Seaboard.[5] Defendants Trataros and Seaboard cross-move for summary judgment dismissing plaintiffs' claims against them.

## DISCUSSION

### I. Threshold Questions of Law

There are two threshold questions of law that must be settled before any issue of summary judgment liability may be addressed. The first is whether plaintiffs' claims against Trataros and Seaboard are

vent. (Letter of November 30, 1998 from Plaintiffs' counsel to Magistrate Roanne Mann; McDermott Aff. at ¶ 4 and Exhibits thereto.)

2. The Complaint also seeks an "account" from Sovereign, and an order requiring Frascone to submit to an audit of Sovereign by the Funds. (Complaint at ¶¶ 22–29.)

3. Sovereign executed two agreements with the Union, the first effective between July 1, 1993 and June 30, 1996, the second effective between July 1, 1996 and June 30, 1999. Both agreements contain identical provisions requiring Sovereign (and Frascone, in his capacity as a principal of Sovereign) to post a surety bond to insure payment of contributions to the Funds, in the amount of $10,000 for employers employing up to 15 employees, and $50,000 where employees exceed that number. (Complaint, Exhibit A, Art. X, Sec. 6(a), and Exhibit B, Art. X, Sec. 5.)

4. Trataros and Seaboard state that a settlement agreement with CCSC is imminent, which statement is not disputed by plaintiffs. (Defendants' Affirmation and Rule 56.1 statement, at ¶ 5, dated June 4, 1999.) The Court has since been informed by letter from the Liquidation Bureau of the Insurance Department of the State of New York that, by an Order dated June 19, 1999 of the Honorable Phyllis Gangel–Jacob, J.S.C., CCSC has been adjudicated insolvent, and the Superintendent of Insurance has been appointed Rehabilitator of the company. Judge Gangel–Jacob's Order includes a provision enjoining further prosecution of any proceeding pending against CCSC.

5. Plaintiffs seek only a judgment of liability, with damages to be determined in further proceedings. (Plaintiffs' Rule 3(g) Statement at ¶ 10.)

preempted under ERISA. The second is whether, if they are not preempted, this Court should assert supplemental jurisdiction over them. Examining these questions in turn, we conclude that (i) plaintiffs' claims against Trataros and Seaboard are not ERISA-preempted; and (ii) this Court should exercise supplemental jurisdiction over those claims.

### A. *ERISA Preemption*

Plaintiffs cite two decisions by the Second Circuit, and one Memorandum and Order of this Court relying on those decisions, in support of the proposition that surety bond claims are not preempted by ERISA. *See Bleiler v. Cristwood Const., Inc.,* 72 F.3d 13 (2d Cir.1995); *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561 (2d Cir.1995); *Cement and Concrete Workers District Council Welfare Fund v. DeGaetano Const.,* Mem. and Order, CV–94–3604 (E.D.N.Y. Mar. 6, 1996) (Glasser, J.). Defendants rely primarily on three more recent Second Circuit decisions finding separate sections of the New York Lien Law preempted under ERISA, and urge this Court to extend the reasoning of those decisions to the provision of the New York State Finance Law that, they insist, is operative in this case. *See EklecCo v. Iron Workers Locals 40, 361, & 417 Union Sec. Funds,* 170 F.3d 353 (2d Cir.1999); *Plumbing Ind. Bd. v. E.W. Howell Co.,* 126 F.3d 61 (2d Cir.1997); *Romney v. Lin,* 105 F.3d 806 (2d Cir.), *cert. denied,* 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997).

The parties present different theories of the legal basis for plaintiffs' claims against Trataros and Seaboard. As plaintiffs see it, those claims stem from the provisions of a 1993 surety bond (the "Bond"), issued by Seaboard in favor of the New York City Housing Authority, whereby Seaboard undertook to guarantee the payment of

> all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the [Williamsburg Hous-

ing Project rehabilitation] ... whether such persons be agents, servants or employees of the Principal [viz., Trataros] or of any such Subcontractor [to whom Work under this Contract is sublet].

(Plaintiffs' Rule 3(g) statement, attaching the Bond as Exhibit A thereto.) Plaintiffs also draw attention to the Bond's definition of proper claimants under the broad substantive provision just quoted:

> All persons who have performed labor, rendered services or furnished materials and supplies, as aforesaid, shall have a direct right of action against the Principal and his, it or their successors and assigns, and the Surety herein or against either or both or any of them and their successors and assigns. Such persons may sue in their own name, and may prosecute the suit to judgment and execution without the necessity of joining with any other person as party plaintiff.

*Id.* Submitting that they have standing under these contractual provisions "in their own behalf and in their representative capacity" as persons who performed labor and rendered services for Sovereign, as subcontractor to Trataros, plaintiffs argue that they are proper claimants under the terms of the Bond, and that the Bond makes Trataros and Seaboard guarantors of Sovereign's and Frascone's obligations under the Agreements. (Plaintiffs' Rule 3(g) Statement at ¶ 13.)

Defendants Trataros and Seaboard reject the contention that the sole basis of plaintiffs' claims is the Bond. Asserting that the Bond was issued pursuant to the specific mandate of New York State Finance Law § 137, defendants insist that it is § 137, and not the Bond standing alone, that confers a cause of action upon plaintiffs. State Finance Law § 137 requires the posting of payment bonds on public works projects "guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors." State Finance Law § 137(1). The law further defines the ex-

pression "moneys due to persons furnishing labor to the contractor or his subcontractors" to include:

> all sums payable to or on behalf of persons furnishing labor to the contractor or his subcontractors, for wages, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay, life insurance or other benefits, payment of which is required pursuant to the labor law or by the contract in connection with which the bond is furnished or by a collective bargaining agreement between organized labor and the contractor or subcontractor, and which are computed upon labor performed in the prosecution of the contract. A trustee or other person authorized to collect such payments shall have the right to sue on the payment bond in his own name and subject to the same as if he were the person performing the labor upon which such sums are computed.

*Id.* at § 137(5)(b).[6]

Defendants argue, and plaintiffs tacitly concede, that the difference between plaintiffs' and defendants' theories of where the prime locus of the preemption inquiry lies—whether in a surety agreement between Trataros and Seaboard, governed by state law principles of contract and surety law, or, in a statute that confers specific rights of enforcement upon employee benefit plans—marks a crucial point of divergence between the parties. By insisting that the sole basis of its claim against Trataros and Seaboard is the Bond, and

indeed by declining even to address the applicability of State Finance Law § 137 to the Bond, plaintiffs argue in effect that the only relevant precedents are, first, this Court's previous determination in facially similar circumstances that there is no ERISA preemption of a claim turning on state surety law and its application to a "non-plan-related contract action," and second, the Second Circuit's decisions in *Greenblatt* and *Bleiler,* upon which this Court relied in coming to that determination (neither of which involved consideration of State Finance Law § 137). For their part, defendants argue that recognizing State Finance Law § 137 as the source of plaintiffs' claims makes apparent the close parallels between that provision and those of the New York Lien Law that the Second Circuit found ERISA-preempted in *EklecCo* and *Plumbing Industry Bd.,* thus compelling the conclusion that State Finance Law § 137 is also subject to ERISA preemption.

■ We do not share the parties' perception of this threshold issue.[7] For the reasons that follow, we find that even if (as we assume it is) the ultimate basis of plaintiffs' claim against Trataros and Seaboard is the enforcement mechanism of State Finance Law § 137, that provision is not preempted under ERISA, and therefore, presents a state law claim that, for reasons also set forth below, is adjudicable in this Court under principles of pendent jurisdiction.[8]

---

6. Section 137 also contains this provision, conferring standing to sue on a payment bond directly upon those providing labor or material under the relevant contracts: "Every person who has furnished labor or material, to the contract or to the subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name...." *Id.* at § 137(3).

7. Nor indeed does the Court of Appeals of New York, as indicated in a recent discussion of State Finance Law § 137, in which it observed that the distinction between "common-law" and "statutory" bonds that used to be invoked before § 137 was amended in 1985 to make public improvement bonds mandatory "has lost its meaning and effect." *A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co.,* 92 N.Y.2d 275, 280, 680 N.Y.S.2d 45, 702 N.E.2d 830 (1998).

8. The New Jersey Supreme Court recently rejected a defendant-surety's attempt to distinguish *Greenblatt* on the ground that "the cause of action involved there arose from common-law breaches of contract rather than

We begin with an assessment of the cases. In *Greenblatt*, the guardians of certain union benefit funds were seeking to recover contributions to those funds from the surety of a bankrupt subcontractor (in other words, from a party in the posture of Contractors Casualty in this case). The Second Circuit held that the funds' action against the surety, pursuant to "state surety law," presented "but a 'run-of-the-mill state law claim[ ],' similar to tort or non-plan-related contract actions to which ERISA plans may be a party." *Greenblatt*, 68 F.3d at 574 (quoting *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). The Court reasoned that although the funds' claim on the surety bond " 'obviously affect[ed] and involv[ed] ERISA plans' " it did not "conflict with any enforcement mechanism specified in ERISA," inasmuch as "surety law does not touch upon any rights or duties incident to the ERISA plan itself, nor does it conflict with any ERISA cause of action." *Id.* at 574–75 (quoting *Mackey*, 486 U.S. at 833, 108 S.Ct. 2182). The Court concluded that the funds' action was not preempted under ERISA.

*Bleiler* presents a closer factual posture to this case. There, union benefit funds sought to recover unpaid contributions provided for under a collective bargaining agreement with a subcontractor. Defendants included the general contractor on the project, and its surety (entities in the position Trataros and Seaboard occupy here). Plaintiffs' claim against the general contractor and its surety was premised upon a Connecticut bond statute, pursuant to which the contractor had obtained a payment bond "guaranteeing certain obligations in connection with the project." *Bleiler*, 72 F.3d at 14.[9] The Court concluded that *Greenblatt* disposed of the preemption issue,

> because it held that a state contract claim on a surety bond was not preempted by ERISA and thus was not a ground for removal. In so holding, we noted that such a claim neither related to any employee benefit plan nor conflicted with any enforcement mechanism specified in ERISA.

*Id.* at 16 (citing *Greenblatt*, 68 F.3d at 572–75).

Defendants Trataros and Seaboard urge that *Greenblatt* and *Bleiler* are distinguishable. Defendants argue that the more recent Second Circuit decisions cited above show that the Second Circuit has adopted a more nuanced view of ERISA preemption in the suretyship context than the broad statements of *Greenblatt* and *Bleiler* suggest.

Defendants point in particular to parallels between the language of the State Finance Law § 137 and New York Lien Law §§ 3 and 5 to show that the reasoning under which the latter provisions are ERISA-preempted compels the same result as to the former. (Defendants' Mem. of Law at 10–11.) But, the Second Cir-

from legislation requiring that public projects be bonded." *Board of Trustees of Operating Engineers Local 825 Fund Service Facilities v. L.B.S. Const. Co.*, 148 N.J. 561, 574, 691 A.2d 339 (1997). The Court explained: "ERISA does not make such a distinction, and the analysis of the federal courts does not turn on the possible difference between a publicly-required bond and one entered into voluntarily." *Id.* (citations to *Greenblatt* and *Bleiler* omitted).

9. The bond statute at issue in *Bleiler*, Conn. Gen.Stat. § 49–42, provides that "[a]ny person who performed work or supplied materials" in a bonded construction project, including "[a]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond," has a right of action upon the payment bond. Conn.Gen.Stat. § 49–42(a). Significantly, the Connecticut law, unlike New York State Finance Law § 137, does not expressly include employer contributions to employee benefits funds within the scope of the "full payment" for which it provides an enforcement mechanism; nor does the Connecticut law expressly authorize suits by the trustees of such a employee benefits funds, as State Finance Law § 137 does. *See* N.Y. State Finance Law § 137(5)(b).

cuit's discussion of the controlling test in *Plumbing Industry Bd.* does not support defendants' proposed analogy. Reasoning from the Supreme Court's analysis of the "relates to" language of § 514(a) of ERISA, 29 U.S.C. § 1144(a),[10] the Second Circuit there proposed two ways "in which the anti-preemption presumption can be overcome":

> First, preemption will apply where a state law clearly 'refers to' ERISA plans.... Second, a state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear 'connection with' a plan in the sense that it 'mandate[s] employee benefit structures or their administration' or 'provid[es] alternative enforcement mechanisms.'

*Plumbing Industry Bd.*, 126 F.3d at 67.

Construing the first prong of this test, the Court determined that the core of "reference to" analysis is proof "that the challenged statute either refers solely to ERISA plans or depends as an essential part of its operation on their existence." *Id.* at 68. As to the second prong, the Court identified the essential factor as the original Congressional objective "to eliminate alternative state law remedies for benefit plan participants and beneficiaries, relegating such persons to the six well-integrated remedies specifically provided in the statute's civil enforcement provisions...." *Id.*

Applying these standards, the Court first concluded that Lien Law § 5 did not "refer to" ERISA plans for purposes of preemption, noting in particular that the provision "cannot be said to depend on ERISA for an essential part of its operation," and also that it was not clear that it "can apply *only* to [ERISA] plans." *Id.* (emphasis in original). These findings are dispositive for the purposes of "reference to" analysis of State Finance Law § 137, which can equally well be said not to apply exclusively to ERISA plans, and concerning which there is no indication in the record that it depends on ERISA "for an essential part of its operation."

Defendants argue strenuously and at length that State Finance Law § 137 does provide an "alternative enforcement mechanism" under the second prong of *Plumbing Industry Bd.*'s ERISA preemption analysis. (Defendants' Mem. of Law at 7–16.) The Second Circuit so concluded with respect to New York Lien Law §§ 3 and 5, and these findings do raise a question about the viability of the preemption principles announced in *Greenblatt* and *Bleiler*. *See EklecCo*, 170 F.3d at 356–57 (concluding that section 3 of the New York Lien Law is ERISA-preempted because, like section 5 of the same statute, found to be ERISA-preempted in *Plumbing Industry Bd.*, it provides "a collection measure that impermissibly supplements the limited enforcement mechanisms enumerated in ERISA 'for enforcing the rights protected by ERISA § 502(a)' ").[11] We conclude,

**10.** Section 514(a) provides, with exceptions not relevant here, that ERISA shall supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *See Plumbing Industry Bd.*, 126 F.3d at 66.

**11.** The question raised is this: what is the distinction between the enforcement mechanisms provided to benefits funds under State Finance Law § 137 and New York Lien Law § 5, such that actions by funds to collect on surety bonds executed pursuant to the former provision are not ERISA-preempted, whereas actions by the same funds on liens placed under authority of the latter provision are? As set forth immediately below, the Second

Circuit seems to distinguish these cases, and we resolve the issue presented here on that basis. Nevertheless, more should be said than has been about why section 137 of the State Finance Law is a "generally applicable enforcement statute" not preempted under ERISA, while section 5 of the New York Lien Law is an ERISA-preempted "alternative enforcement mechanism." This Court perceives at least this basis for the distinction, namely the necessity of referencing the Lien Law in an action brought to enforce a lien which that statute creates. By contrast—indeed, as the instant action attests—an action on a surety bond need not reference the State Finance Law at all. An action on a surety bond has its footing in state common law principles of

however, that this question must be resolved in accord with the preemption principles of *Greenblatt* and *Bleiler*, as reaffirmed in *Plumbing Industry Bd., Romney v. Lin*, and *EklecCo*, and therefore, against the defendants here.

The simple reason sustaining this conclusion is that the Second Circuit itself has clearly considered the matter and, for now, evidently perceives no basis for limiting its earlier holdings. Thus, in the course of its discussion in *Plumbing Industry Bd.* of whether Lien Law § 5 provides an alternative enforcement mechanism to ERISA's, the Court observes:

> Further, while a state cannot itself require that a person pay to a plan benefit obligations that ERISA imposes on someone else, a state can—through generally applicable enforcement statutes that function irrespective of ERISA— enforce third-party obligations that are created without ERISA's mandate or influence. For example, an action on a surety contract generally will not be preempted.

*Id.* (citations to *Greenblatt* and *Bleiler* omitted) (dicta). Likewise, in *Romney v. Lin*, the Court distinguished *Greenblatt* from its determination of ERISA preemption as to a New York statute imposing shareholder liability for debts to employees, including employee benefit plans, in the following terms:

> In *Greenblatt*, the basis for the defendant's liability was a surety contract. Veil-piercing and surety law are principles of general applicability, within a state's traditional purview, that bear on employment benefits only insofar as the underlying transactions happen to involve employment benefits. ERISA does not create federal law on veil-piercing ..., or on the enforcement of judgments generally. Nor does ERISA create federal law on the enforceability of surety contracts (whether or not the bond secures obligations that the employer owed under ERISA).

*Romney v. Lin*, 105 F.3d at 811.

The Second Circuit has not had occasion squarely to address the question of whether State Finance Law § 137 is ERISA-preempted under the possibly conflicting standards enunciated in *Greenblatt* and *Bleiler*, on the one hand, and *Plumbing Industry Bd.* and *Romney v. Lin*, on the other. But, at least one district court has considered the issue, and concluded that *Greenblatt* "compels the finding that a claim under § 137 of the New York State Finance Law does not trigger ERISA preemption." *Local No. 46 v. Trataros Const., Inc.*, 920 F.Supp. 55, 57 (S.D.N.Y. 1996).[12] We see no reason at this juncture to find differently, and conclude that, even under the assumption that plaintiffs' claims against Trataros and Seaboard have their footing in State Finance Law § 137, those claims are not ERISA-preempted, and thus survive as state law claims pendent to the federal question raised in

suretyship and contract, whereas an action on a mechanic's lien is entirely a creature of statute. *See Birmingham Iron Foundry v. Glen Cove Starch Mfg. Co.*, 78 N.Y. 30, 32 (1879); *E–J Elec. Installation Co. v. Miller & Raved, Inc.* 51 A.D.2d 264, 380 N.Y.S.2d 702, 703 (1st Dep't 1976).

**12.** Defendants argue that the Court's conclusion in *Local 46* may be distinguished because the facts there showed, as they do not here, that the general contractor had taken affirmative steps to assume the subcontractor's obligations to continue contributions to union benefit funds. It follows, say defendants, that *Local 46* does not present a case, as is presented here, where liability against the defendants is predicated "entirely upon State Finance Law § 137." (Defendants' Mem. of Law at 11–12.) Here, however, we assume for the purposes of argument that § 137 is the sole basis of defendants' liability, and conclude nevertheless that under *Greenblatt* the provision amounts, at most, to a "provision of state surety law [that] might affect the collectibility of funds owed to a[n employee benefit] plan." *Greenblatt*, 68 F.3d at 574. We note that this characterization has effectively been ratified twice since in dicta, in the above-cited passages from *Plumbing Industry Bd.* and *Romney v. Lin*.

plaintiffs' cause of action against defendant Frascone.

### B. *Supplemental Jurisdiction*

 Federal law grants district courts supplemental jurisdiction over all claims that are so related to claims in an action over which the district courts have original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Where state claims are part of the same case or controversy that includes a federal claim, the court's exercise of pendent jurisdiction is the "favored and normal course of action." *Mizuna, Ltd. v. Crossland Federal Sav. Bank,* 90 F.3d 650, 657 (2d Cir.1996) (quoting *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)).

 Where all claims over which the district court had original jurisdiction have been dismissed, leaving only state law claims in the action, the district court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). In deciding whether to exercise its discretion to hear such solely remaining state-law claims, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Because (or, to the extent that) the claims remaining in this case present purely state law questions, defendants Trataros and Seaboard argue that this Court should dismiss those claims for lack of subject matter jurisdiction. In response, plaintiffs argue that, although he has defaulted, the federal ERISA claim against Frascone remains legally viable inasmuch as a default judgment has not yet been entered against him. Plaintiffs also point to the fact that discovery in this case is complete. (Plaintiffs' Mem. of Law in Opposition at 5–6.)

 This case has been before this Court since November of 1997. Although, as defendants observe, discovery has not figured prominently in the proceedings, this is because there are few material facts in dispute, and because the case turns on the construction of contracts and statutes. This is to say that this Court may decide most of the extant issues in this case on the present motion. It would hardly serve the ends of judicial economy, convenience, or fairness to the litigants, to send a case in such a posture back to state court.

### II. *The Summary Judgment Motions*

### A. *The Legal Standard for Summary Judgment in Contract Actions*

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of production on the summary judgment motion, but upon being satisfied, the burden of proof then shifts to the nonmovant, who must demonstrate that a genuine issue of fact exists for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As a general matter in a contract dispute, summary judgment may be granted only if the contractual language is not susceptible to different reasonable interpretations, and there exists no relevant extrinsic evidence of the parties' actual intent. *Mellon Bank, N.A. v. United Bank Corp. of New York,* 31 F.3d 113, 116 (2d Cir. 1994); *see also Williams & Sons Erectors v. South Carolina Steel,* 983 F.2d 1176, 1183–84 (2d Cir.1993) ("Ambiguity without the existence of extrinsic evidence of intent

presents not an issue of fact, but an issue of law for the court to rule on.").

### B. Contractual Liabilities of the Parties

#### 1. The Bond and State Finance Law § 137

The Bond upon which plaintiffs claim against Trataros and Seaboard was issued pursuant to and in compliance with the mandate of State Finance Law § 137 for municipal projects such as the housing project renovations undertaken here. Thus, for the purposes of contractual construction, and as assumed for the purposes of the ERISA preemption inquiry, the Bond may be deemed to be governed by the provisions of State Finance Law § 137. *See A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co.*, 92 N.Y.2d 275, 279–80, 680 N.Y.S.2d 45, 702 N.E.2d 830 (1998) (holding that "once municipalities were required to bond all substantial construction projects, the distinction [between common-law and statutory bonds] lost its meaning and effect").

■ So construed, it is clear that the Bond makes plaintiffs proper parties to this action, with standing to sue upon the obligations undertaken by Sovereign, as subcontractor to Trataros, to make periodic contributions to the Funds pursuant to the terms of the Agreements between the Union and Sovereign. Specifically, State Finance Law § 137 provides that the "wages and compensation" guaranteed under the Bond shall include "all sums payable to or on behalf of persons furnishing labor to the contractor or his subcontractors, for wages, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay, life insurance or other benefits, payment of which is required ... by a collective bargaining agreement between organized labor and the contractor or subcontractor, and which are computed upon labor performed in the prosecution of the contract." State Finance Law § 137(5)(b). The law further pro-

vides that "[a] trustee or other person authorized to collect such payments shall have the right to sue on the payment bond in his own name," so authorizing plaintiffs here to proceed without benefit of assignments from the Union members who rendered services under the Agreements with Sovereign.

#### 2. Liability Under the Agreements

##### i. The First Agreement

It is not disputed that the sums sought herein by plaintiffs are contributions to Union benefits and dues funds contracted for by the Union and Sovereign for which payment is past due. The parties do differ on how, and more precisely, under which contractual instruments, those obligations arose. Plaintiffs argue that they derive from a single "continuous contract," made effective from July 1, 1993, and extended as of July 1, 1996 through June 30, 1999. (Plaintiffs' Mem. of Law in Opp. to Defendants' Mot. for Summary Judgment at 9–10.) Defendants argue in reply that there are two separate agreements, and that liability issues must be assessed independently under each.

The difference matters because of an alleged failure of notice. State Finance Law § 137 provides that

> a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed ... stating with substantial accuracy the amount claimed and the name of the party ... for whom labor was performed.

State Finance Law § 137(3). The record shows that Trataros and Seaboard first received notice of deficiencies in Sovereign's bonded obligations on August 19,

1997.[13] Therefore, unless plaintiffs are correct that the Agreements constitute a single contract, there is no factual dispute concerning plaintiffs' failure to give notice within 120 days of the last day on which payments were due under the first of the two Agreements (which ran from July 1, 1993 to June 30, 1996).

■ When contract language "has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," then, as a matter of law, no ambiguity exists and liability may be assessed on the basis of the contract's definite terms. *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1095 (2d Cir. 1993) (applying New York law). The language of the Agreements is both definite and precise. The first agreement declares, in its "Duration" clause, that it is "effective for the period commencing July 1, 1993 and shall terminate on June 30, 1996." (Complaint, Exhibit A thereto at Art. XX, p. 64.) For its part, the second agreement states that it "is made as of July 1, 1996," and "is effective for the period commencing July 1, 1996 and shall terminate June 30, 1999." (Complaint, Exhibit B thereto at Preamble, p. 1 and Art. XX, p. 64.) Plaintiffs call attention to Article VIII of the second agreement, governing wages, which states that "[t]he existing contract Agreement between the parties shall be amended as listed below and be effective from July 1, 1996 to June 30, 1999," but the obvious effect of this provision is to create a new schedule of hourly wages, not to give expression to the par-

ties' intent that the Agreements be read for all interpretive purposes as a single and continuous whole.

■ The New York Court of Appeals has specifically upheld the one-year statute of limitations of State Finance Law § 137, as applied to a payment bond that, without making reference to § 137, was nevertheless determined by the Court to be governed by it. *A.C. Legnetto*, 92 N.Y.2d at 280, 680 N.Y.S.2d 45, 702 N.E.2d 830. The same reasoning must apply to the notice provision of § 137. We conclude that plaintiffs failed to give timely notice to Trataros and Seaboard of deficiencies arising under the first agreement, and therefore forfeited their right of action upon those sums.[14]

### ii. *Liability Under the Second Agreement*

The bulk of plaintiffs' claim against Trataros and Seaboard accrued under the second agreement, from deficiencies in benefits contributions and dues by Sovereign between January and September of 1997 exceeding $140,000, by plaintiffs' reckoning. (Complaint at ¶ 17 and Exhibit E thereto.)

Defendants Trataros and Seaboard argue that plaintiffs' claims under the second agreement are barred by the Union's breach of that agreement. The breach allegedly arose with respect to the following provision:

> When an Employer bound by the Agreement owes the C & CWDC Fringe Benefit Funds an amount greater than the face amount of its surety bond, the sure-

---

**13.** The August 19 notice consisted in service by certified mail to Trataros of a Mechanic's Lien in the amount of $70,000. Notice of a second lien, for $80,000, was sent to Trataros on October 21, 1997. (Plaintiffs' Rule 3(g) Statement, and Exhibits B and C thereto.) For the purpose of these motions, Trataros and Seaboard admit that such notice was given. (Defendants' Rule 56.1 Statement in Opposition to Plaintiffs' Mot. for Summary Judgment.)

**14.** By their own averments in the Complaint, those sums come to slightly less than $10,000, not including penalties, interest, and costs provided for under both Agreements. (Complaint at ¶ 17, 20, and Exhibits C and D thereto.) Inexplicably, plaintiffs understate these sums when reiterating the claims of the Complaint in their opposition papers to defendants' motion for summary judgment. (Plaintiffs Opp. to Defs.' Mot. for Summ. Judgment at 9.)

ty bond must be increased to cover such indebtedness. If this is not done, it shall be mandatory for the Union to remove all members in the bargaining unit from the employ of that Employer.

(Complaint, Exh. B thereto at Art. X, Sec. 5(b).) Defendants allege, and plaintiffs do not deny, that the Union never removed its members from Sovereign's employ, despite having been aware of deficiencies to the Funds well in excess of the bonded amount of $10,000. Defendants argue that the Union's breach exposed them to liabilities of which they had no notice, and accordingly, plaintiffs' claim here should be estopped on equitable grounds.

So stated, the non sequitur in defendants' argument becomes apparent. Defendants cite the conduct of the Union as premise for the estoppel they seek. But, of course, the parties they seek to estop are the Funds, and their administrator in his fiduciary capacity. The Funds are third-party beneficiaries to an agreement between the Union and Sovereign. They are also statutory third-party beneficiaries of the Bond, pursuant to the provisions of State Finance Law § 137. *See* Restatement Third, Suretyship and Guaranty § 71(1)–(2) (1996) ("A legally mandated bond is a secondary obligation required by law, whether the obligee or beneficiary is a government, a class of persons to whom the principal obligor may owe an obligation, or a particular person.... When, under applicable law of the jurisdiction, a legally mandated bond is deemed to, contain terms set forth in the law that requires that it be provided, the legally mandated bond is treated as containing those terms."). Under settled principles governing the construction of collective bargaining agreements, they are third-party beneficiaries with a special status.

The dispositive rule for this case was announced by the Supreme Court in *Lewis*

*v. Benedict .Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). There the trustees of a welfare fund for coal miners sought to recover contributions to the fund contracted for under a collective bargaining agreement. In the proceedings below, judgment had been entered against the fund for a set-off claim by the defendant coal operator, as damages for the United Mine Workers' breach of certain no-strike provisions in the agreement.

The Court observed that in the "typical" third-party beneficiary contract, it might well constitute a "desirable rule of construction" to make the third party subject to any counterclaims that the promisor might have against the promisee. *Id.* at 467, 80 S.Ct. 489. But, the Court added, a collective bargaining agreement providing for contributions to a union welfare fund "is not a typical third-party beneficiary contract." *Id.* at 468, 80 S.Ct. 489. The third party in this unique instance is a fund to be used solely for the benefit of employees and eligible dependents, and "is in no way an asset or property of the union." *Id.* at 465, 80 S.Ct. 489.[15] In light of the purpose of such funds—namely, "protecting the interests of beneficiaries ... many of whom may be retired, or may be dependents, and therefore without any direct voice in the conduct of union affairs"—the Court held that

> the parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute to a welfare fund....

*Id.* at 470–71, 80 S.Ct. 489. *See also Robbins v. Prosser's Moving and Storage Co.,* 700 F.2d 433, 436–37 (8th Cir.1983) (citing *Benedict Coal* as authority for "an exception" to the rule that a promisor may

---

**15.** Compare this language from the second agreement, providing that contributions to the Fund shall be "for the purpose of providing medical, surgical, hospitalization, death and

such other forms of group benefits for eligible Employees and the eligible dependents as the Trustees may determine." (Complaint, Exh. B thereto at Art. X, Sec. 1(a).)

usually assert against the beneficiary any defense he could have asserted against the promisee), *aff'd, Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984); Restatement, Second, Contracts § 309, Illustration 10 (1979) (based on *Benedict Coal* ).

 Here, neither the clause in question nor any other provision of the second agreement contains anything evincing an intent to make the Union's performance thereunder a condition precedent to the Funds' rights as third-party beneficiaries. We conclude therefore that any breach by the Union of an agreement under which contributions are due to the Funds provides no defense either to the original promisor (namely, Sovereign and Frascone), or to the original promisor's statutory guarantor (Trataros), and its surety (Seaboard). It follows that defendants Trataros and Seaboard have no defense at law, and no defense under the facts in the record before this Court, to plaintiffs' claims upon obligations due under the second agreement with Sovereign. Accordingly, summary judgment is proper in favor of plaintiffs upon those claims.[16]

## CONCLUSION

For the reasons stated, this Court asserts supplemental jurisdiction over plaintiffs' cause of action against Trataros and Seaboard. Summary judgment in part is granted to Trataros and Seaboard dismissing plaintiffs' claims on the basis of the first agreement. Summary judgment in part is granted to plaintiffs against Trataros and Seaboard on claims asserted on the basis of the second agreement. Any remaining disputes concerning the denomination of damages are hereby referred to Magistrate Judge Mann for an inquest.

SO ORDERED.

---

16. Defendants Trataros and Seaboard cite to *U.S. ex rel. Robert DeFilippis Crane Service, Inc. v. William L. Crow Const. Co.,* 826 F.Supp. 647 (E.D.N.Y.1993) for the proposition that "if the beneficiary of a surety bond acts to the detriment of the surety, the surety will be released." (Defendants' Mem. of Law at 21.) But *DeFilippis* stands for no such general rule. In that case, the Court found ample evidence of the third-party supplier's intentional efforts to conceal the extent of the subcontractor's delinquent obligations, aimed at inducing the prime contractor to make advances to the subcontractor. The Court concluded that "[t]o the extent that the prime contractor suffers a loss due to [a supplier's] deception, the supplier's claim should be reduced." *DeFilippis,* 826 F.Supp. at 656. Here there is certainly no evidence of the Union's or the Funds' deceptive conduct. As to notice of deficiencies under the second agreement, Trataros received such notice as was due under State Finance Law § 137(3).